FILED

IN THE UNITED STATES DISTRICT COURT

JAN 28 2025

FOR THE WESTERN DISTRICT OF TEXAS CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| GREG E. LINDBERG | ) |
| | ) |
| Petitioners, | ) |
| | ) Case No. 1:25 CV00133 DII |
| v. | ) |
| | ) |
| HUGH STEVEN WILSON and | ) |
| TA ASSOCIATES, L.P. | ) |
| | ) |
| Respondent. | ) |

## PETITIONER'S VERIFIED COMPLAINT AND
## REQUEST FOR INJUNCTIVE RELIEF

### Introduction

1.      A trustee who refuses to serve the interests of the trust's beneficiary should be removed.

2.      A trustee who violates federal law and the trust instrument's explicit provisions, then engages in self-dealing to sell off trust assets for hundreds of millions of dollars less than their market value, should be suspended immediately.

3.      In this case, the Trustee was entrusted with the exclusive right to control several entities valued at hundreds of millions of dollars.

4.      Instead of doing so for the benefit of the beneficiary, the Trustee has collected millions of dollars in administration fees to sell off trust assets for a fraction of their actual value.

5.      In each transaction Trustee championed himself, his law firm, and his associates over the interests of the trust's beneficiary, causing over a hundred million dollars damage.

6.      Petitioner sues for breach of fiduciary duty seeking monetary damages in the amount of $300 million dollars related to Conspiracy and Tortious Interference with Prospective Business Relations in his gross negligence and mismanagement of the Clanwilliam trust assets.

### Parties, Jurisdiction and Venue

7.      This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as it is a diversity action in which the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney's fees, and complete diversity exists as Mr. Lindberg is a resident of Florida, Trustee is a resident of Colorado and TAA has regional headquarters in Texas.

8.      Petitioner Greg E. Lindberg is a natural person over the age of eighteen (18) and a resident of the State of Florida and is otherwise *sui juris*.

9.      Respondent, Hugh Steven Wilson, Trustee of the Trusts, is a natural person over the age of eighteen (18) and a resident of the State of Colorado and is otherwise *sui juris*. This Court has personal jurisdiction over Respondent. Respondent managed substantial trust assets related to Lindberg that are based in Texas (specifically the assets of Beckett Collectibles, headquartered in Plano, TX and the assets of Home Medical Equipment Specialists which has an office in El Paso, TX and is authorized to do business

in with the Texas Secretary of State) and the allegations complained of in this petition occurred while he was performing his duties as Trustee in Texas.

10.    TA Associates, L.P. is a limited partnership organized and existing under Delaware law, and is the successor to TA Associates, Inc. It has offices in Austin, Texas.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(3) because this is the judicial district in which Respondent TA Associates, Inc. is subject to the court's personal jurisdiction.

12.    All conditions precedent to bringing this action have been satisfied, performed or have otherwise been waived.

## FACTUAL ALLEGATIONS

## I.    <u>Background</u>

13.    Petitioner Greg Lindberg is the beneficial owner of significant interests in hundreds of companies throughout the world.

14.    The collective enterprise value of these entities is several billion dollars.

15.    Over time Lindberg established several trusts, to manage certain of these interests.

16.    These Trusts include the Clanwilliam Group Trust, the Beckett Group Trust, the Home Medical Equipment (HME) Specialists Trust, the Eye Care Leaders (ECL) Trust, and the Fleet Assist Group Trust, collectively the "Trusts".

17.    Lindberg funded the Trusts by irrevocably transferring his (direct or indirect) interests in certain entities to each trust.

18.     Lindberg entrusted the management of these holdings to Respondent Hugh Steven Wilson, appointing Wilson to act as sole Trustee for each of the Trusts.

19.     For all entities relevant to this dispute, Lindberg was the sole beneficial holder of all the stock or membership rights in each entity.

20.     Accordingly, Lindberg conferred upon Wilson the exclusive right to manage and/or vote for the management of each entity.

21.     Simply put, Wilson was the sole person controlling hundreds of millions of dollars' worth of assets and securities, earned and acquired by Lindberg, and placed into the Trusts for the benefit of his beneficiaries.

22.     Wilson was actively involved in managing the Trusts and their assets on a daily basis—as his seven-figure fees demonstrate.

23.     However, Lindberg has learned that Wilson has acted at all times directly contrary to his role as fiduciary, championing his own interests and those of third parties over the designated beneficiaries of the Trusts.

24.     Wilson was bound to take reasonable steps to take control of and protect the property of the Trusts and he did not.

25.     Wilson was required to exercise reasonable care, skill, and caution and he failed to do so.

26.     Wilson agreed to "administer the trust as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. Instead, Wilson exceeded and abused his authority by a) refusing to provide financial

records and accountings as required by the Trust Instruments and applicable law, b) actively working to devalue the assets of the Trusts instead of working to preserve and/or increase assets of the Trusts for the interest of the beneficiaries, c) jeopardizing the assets of the Trusts by precluding income tax filings required by the United States government; and d) colluding with third parties to sell assets for less than their value; and overall working to serve his own interests rather than his fiduciary duties.

## II.    **Trusts Settled by Triton Financial Limited**

27.    Greg Lindberg is the sole ultimate beneficial owner of Triton Financial Limited ("Triton").

28.    Before the formation of the Trusts, Triton was the sole owner of Clanwilliam Headquarters Limited and thereby, its subsidiaries, collectively referred to as the Clanwilliam Group.

29.    Triton was also the sole owner of Fleet Assist Interco Limited and thereby, its subsidiaries, collectively referred to as the Fleet Assist Group.

30.    On or about November 4, 2020, Lindberg caused Triton to establish the Clanwilliam Group Trust ("**Clanwilliam Trust**") to hold the Clanwilliam Group business interests for the benefit of his designated beneficiary, George A. Vandeman.

31.    On or about July 29, 2021, Lindberg caused Triton to establish the Fleet Assist Group Trust ("**Fleet AGT Trust**") to hold the Fleet Assist Group business interests for the benefit of his designated beneficiary, Robert Gaddy.

32.    Lindberg entrusted Respondent Hugh Steven Wilson to serve as Trustee for

**Petitioner's Original Complaint and Request for Injunctive Relief**                    P a g e | **5**

both the Clanwilliam Trust and the Fleet Trust as well as the other Trusts.

33.    By appointing Wilson Trustee and contributing *all* the shares of the Clanwilliam Group and Fleet Assist Group, Lindberg relinquished all control over holdings worth hundreds of millions of dollars to one person—Hugh Steven Wilson.

34.    Wilson alone votes for all Clanwilliam Group and Fleet Assist Group's directors and is thereby completely in control of the management of both the holding companies and all subsidiaries they hold.

## III.    Wilson's Self-Dealing and Willful Devaluation of the Clanwilliam Trust's Assets

35.    The Clanwilliam Trust Instrument restricts the Trustee from making any Disposition of trust property without the written consent of the Settler. *See* Ex. A at p. 9 §5.2(a).

36.    Wilson is attempting to sell the Clanwilliam Group to TA Associates, LLP ("TAA") over the objection of Lindberg who holds a veto right on the sale of any assets of the Clanwilliam Trust.

37.    Lindberg objects to the sale in large part because Clanwilliam Group is worth almost double what TAA is willing to pay for it.

a)    Clanwilliam Group is worth between five and eight hundred million dollars ($500,000,000-$800,000,000).

b)    TAA is only offering $450,000,000.

38.    In conflict with his duties to use best efforts to maintain or increase the value

of trust assets, Wilson has actively campaigned to *decrease* the asking price for Clanwilliam Group in favor of his chosen purchaser.

a) In January 2024, Quadro One Acquisition Corp., a special purchase acquisition company trading on NASDAQ as QDRO (hereinafter, "Quadro"), signed a purchase agreement offering to purchase the Clanwilliam Group for $800,000,000 as part of a purchase agreement for a larger group of Lindberg's companies.

b) Wilson took specific actions to undermine the Quadro deal including refusing to provide necessary information for the SEC filings required by Quadro. Without access to the necessary information for completion of the required SEC filings and related financial audits, Quadro was unable to close the purchase of Clanwilliam Group at the $800,000,000 price.

c) The Quadro purchase of Clanwilliam was terminated in March of 2024.

d) A few months later, Apax Partners offered $500,000,000 to purchase the Clanwilliam Group.

e) Wilson's elected director advanced false and misleading information that caused Apax Partners to withdraw their offering, clearing the way for lower bids.

f) After Apax withdrew from the bidding on Clanwilliam, two other well-qualified buyers approached Lindberg's representatives in November of 2024 about purchasing Clanwilliam. Both of these parties were referred to

Wilson who refused to engage or discuss anything with them. One of these buyers is a well-known large public acquiror of companies like Clanwilliam.

39.    TAA has been trying to acquire Clanwilliam since 2019, before Wilson was even appointed Trustee of Clanwilliam.

40.    Wilson and his law firm Latham & Watkins stand on both sides of the contemplated TAA transaction.

  a)    TAA is represented by Nicholas Cline of Latham & Watkins.

  b)    Wilson is a retired partner, but on information and belief, still accepts distributions of fees and other renumeration, at Latham & Watkins.

  c)    Nicholas Cline called Lindberg in 2023 and demanded that Lindberg agree to sell Clanwilliam to TAA.

  d)    Nicholas Cline was Lindberg's counsel and drafted the Clanwilliam Trust Instrument.

  e)    Nicholas Cline did not secure Lindberg's waiver of any conflict of interest as his former client, serving an opposing client, in a transaction Lindberg is clearly opposed to.

  f)    The Clanwilliam Trust Instrument does not permit the Settlor to remove the Trustee for cause.

  g)    The Clanwilliam Trust Instrument does not provide Lindberg with an ability to designate Board seats, as a number of the other trusts do.

  h)    The Clanwilliam Trust was drafted by Nick Cline, as counsel to

Lindberg, upon information and belief, to undermine Lindberg's ultimately ability to regain control of Clanwilliam and to favor Cline's other clients and partners such as Wilson.

41.     Wilson is attempting to stack Triton's board to secure a vote to sell the Clanwilliam Group to TAA for hundreds of millions less than its true value.

42.     In so doing, Wilson will secure to his law firm substantial legal fees (which, on information and belief, he shares in directly or indirectly) while simultaneously charging his own substantial Trustee fees, collecting fees on both sides of a deal that robs the beneficiary of tens, if not hundreds, of millions of dollars.

## FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duties: All Trusts)

43.     Petitioner incorporates and realleges the previous paragraphs *in haec verba*.

44.     The Trustee has failed to administer the trust solely in the interest of its Beneficiary.

45.     When exercising his right to vote the Trustee did not act in the best interests of the Beneficiary.

46.     The Trustee elected or appointed directors and other managers who did not manage the corporation or enterprise in the best interests of the Beneficiary.

47.     The Trustee otherwise exercised his powers of control over the entities in a manner inconsistent with the best interests of the Beneficiary.

48.     The Trustee failed to administer the trust as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the

**Petitioner's Original Complaint and Request for Injunctive Relief**                    P a g e | **9**

trust.

    a)  A prudent person would not discourage interested purchasers.

    b)  A prudent person would not sell assets for less than their true market value.

    c)  A prudent person would not accept compensation on both sides of a transaction.

    d)  A prudent person would not fail to respond to several interested purchasers.

49.    The Trustee failed to exercise reasonable care, skill, and caution.

50.    The Trustee incurred costs that were not appropriate and reasonable in relation to the trust property.

51.    The Trustee incurred costs that were not appropriate and reasonable in relation to the purposes of the trust.

52.    The Trustee incurred costs that were not appropriate and reasonable in relation to the skills of the trustee.

53.    The Trustee has or had special skills and expertise that should have been applied for the interests of the beneficiary but were instead applied in the interests of others and the Trustee himself.

54.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution in selecting said agents.

55.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution in establishing the scope and terms of said delegation to ensure they were exercised consistently with the purposes and terms of the

**Petitioner's Original Complaint and Request for Injunctive Relief**

trust.

56.    In exercising his right to delegate duties and powers, the Trustee failed to exercise reasonable care, skill, and caution when reviewing said agents' performance and compliance.

57.    The Trustee failed to take reasonable steps to take control of and protect the trust property.

58.    On information and belief, by his refusal to disclose, the Trustee has failed to keep adequate records of the administration of the trust.

59.    On information and belief, the Trustee has failed to take reasonable steps to enforce the claims of the trust.

60.    The Trustee has failed to keep the beneficiary reasonably informed about the administration of the trust.

61.    The Trustee has failed to keep the beneficiary reasonably informed of the material facts necessary for the beneficiary to protect his interests.

62.    The Trustee has refused to promptly respond to the beneficiary's request for information related to the administration of the trust.

63.    The Trustee has failed to report to the beneficiary regarding the trust's assets and each asset's respective market value.

64.    The Trustee failed to exercise his discretionary powers in good faith.

## SECOND CLAIM FOR RELIEF
### (Conspiracy)

65.    Petitioner incorporates and realleges the previous paragraphs *in haec verba*.

66.    Petitioner would show that Wilson and TAA have entered into a civil conspiracy to injure Petitioner. More specifically, Respondents have combined to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. Respondents had (1) an end to be accomplished; (2) there was a meeting of the minds on the end or course of action; (3) one or both of Respondents committed one or more overt, unlawful acts; and (4) Petitioner was injured as proximate result of those acts.

## A.    The Civil Conspiracy as Applicable to All Counts of Recovery:

67.    The acts and conduct of Respondents set out in paragraphs 1 through 42 above were undertaken and accomplished as a result of Respondents knowingly participated in an illegal civil conspiracy, through a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, and at all relevant times acting under color of state law (herein the "Civil Conspiracy") namely to deprive Petitioner of the real value of his assets. This illegal civil conspiracy was designed and implemented to injure and damage Petitioner in his person, business and business reputation, and property. Accordingly, the liability of each Respondent co-conspirator is joint and several liability for all damages suffered and there is no right of contribution or indemnity among these co-conspirator Respondents.

68.    As a result of the foregoing, Petitioner suffered actual, consequential and pecuniary damages as set out herein. As a result of the intentional and knowing design of the Respondents, through their illegal conspiracy, to injure and cause damage to the Petitioner, the Petitioner is entitled to recover punitive damages.

**Petitioner's Original Complaint and Request for Injunctive Relief**

69.     Accordingly, each Respondent is liable in the capacity of co-conspirators for tortious and unlawful conduct of the other Respondents as outlined above

**B.     Tortious Interference with Prospective Business Relations**

70.     Petitioner incorporates and realleges the previous paragraphs *in haec verba*.

71.     Additionally, and in the alternative, the Petitioner would show that Respondents' actions, as set forth in the paragraphs above, have caused potential buyers to terminate their offers to purchase Clanwilliam.

72.     The acts of Wilson were intentional and willful. Wilson intentionally, maliciously and unlawfully undermined a competitive bid from Apax Partners, LLP and Wilson refused to consider bids from Constellation Software and another buyer represented by Donal O'Sullivan.

73.     Wilson also intentionally, maliciously, and unlawfully refused to provide necessary information required for SEC filings and related audits in order to complete the Quadro Acquisition One Corp. (NASDAQ: QRDO) purchase of Clanwilliam for $800 million, and as a result, the purchase by Quadro was ultimately terminated.

74.     Wilson's acts were calculated to cause damage to Petitioner.  Wilson knew full well that undermining competing higher bids and steering the business towards his favored bidder at a lower price would cause damage to the business since TAA's bid was over $300 million dollars lower than the purchase agreement signed with Quadro.

75.    Wilson also knew full well that by undermining the Quadro purchase of Clanwilliam by refusing to supply necessary information that the Petitioner would be damaged by over $300 million dollars.

76.    Wilson's acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of Wilson. Wilson's actions constitute malice. As an independent trustee, Wilson had no justifiable cause to favor one bidder over another. However, Wilson favored TAA solely because he was advancing his own economic interests at the expense of the settlor and beneficiary to the trust.

77.    There was no privilege or justification for Wilson's actions.

78.    As a result of foregoing, Petitioner suffered actual, consequential and pecuniary damages as both Quadro and Apax Partners terminated their bids as a result of Wilson's efforts to undermine these bids in favor of TAA as set out herein and Petitioner is entitled to recover punitive damages.

## THIRD CLAIM FOR RELIEF
### (Removal of Trustee: All Trusts)

77.    Petitioner incorporates and realleges the previous paragraphs *in haec verba*.

78.    Trustee has committed a serious breach of trust.

79.    Trustee has been unfit, unwilling, and/or has persistently failed to administer the trust effectively.

　　a)    The Trustee is selling off trust assets for a fraction of their actual value.

b)     The Trustee is authorizing dispositions he does not have the power to make.

80.     Removal of the Trustee best serves the interests of the beneficiaries.

81.     Removal of the Trustee is requested by all the qualified beneficiaries.

82.     Removal of the Trustee is consistent with the material purposes of the Trust.

83.     A suitable successor trustee is available.

84.     Pending final decision, Petitioner requests that the Court grant the relief requested within.

## FORTH CLAIM FOR RELIEF
### (Demand for Accounting)

85.     Petitioner incorporates and realleges the previous paragraphs *in haec verba.*

86.      The Trustee has failed in all instances to provide even basic financial documents to the beneficiaries he serves.

87.     Both the beneficiaries and the Settlors are entitled to review basic records for each asset the Trustee manages, and each of their subsidiaries, to oversee the Trustee's management and ensure decisions have been made in the best interest of the beneficiaries.

88.     Petitioner demands a full and complete accounting of the Trust in accordance with the Texas Trust Code Section 113.151.  The accounting should comply with the Texas Trust Code Section 113.152.

## PRELIMINARY AND PERMANENT INJUNCTION

89.     Petitioner incorporates and realleges the previous paragraphs *in haec verba*.

90.     "The decision whether to grant a preliminary injunction is within the

discretion of a district court." *United States v. Texas,* No. EP-21-CV-173-KC, 2021 WL

4848743 at *1 (W.D. Tex. Aug. 26, 2021) citing *Allied Mktg. Group, Inc. v. CDL Mktg.,*

*Inc.*, 878 F.2d 806, 809 (5th Cir. 1989). "[A] preliminary injunction is [meant] to preserve

the status quo and thus prevent irreparable harm until the respective rights of the parties

can be ascertained during a trial on the merits." *Id.* quoting *Exhibitors Poster Exch., Inc. v.*

*Nat'l Screen Serv. Corp.*, 441 F.2d 560, 560 (5th Cir. 1971).

91.    To succeed on a preliminary injunction, a movant must establish four factors:

(1) likelihood of success on the merits; (2) that he is likely to suffer irreparable harm in the

absence of such relief; (3) the balance of equities tips in his favor; and (4) an injunction is

in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7,

20 (2008).

92.    Of the four factors above, the principal factor is the first – the likelihood of

success. *See Belknap v. Bank of America, N.A.*, 2012 WL 3150271, at *3 (S.D. Tex. August

1, 2012). "The Fifth Circuit has previously stated '[t]he importance of this requirement

varies with the relative balance of threatened hardships facing each of the parties.'" *Texas*

*v. United States*, 328 F.Supp.3d 662, 710 (S.D. Tex. 2018) (citing *Canal Auth. of State of*

*Florida v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)). A plaintiff does not have to show

a certainty of winning to meet this factor. *See Texas v. United States*, 328 F.Supp.3d at 710.

93.    Petitioner additionally petitions this Court to issue relief in the way of a

preliminary injunction, as monetary damages cannot adequately compensate Petitioner for

the harm caused to Petitioner including the depletion of the businesses main assets due to

**Petitioner's Original Complaint and Request for Injunctive Relief**                    P a g e | **16**

the conduct of Respondents; and Respondents will cause the business' assets to be sold for hundreds of millions of dollars less than their market value, causing potentially hundreds of millions in losses and damages Clanwilliam's hard earned reputation in a relevant market.

94.     The Petitioner has demonstrated a reasonable probability of success on the merits of Petitioner's cause of action to remove Wilson as trustee from all of the Trusts. Wilson's actions as Trustee have repeatedly violated the fiduciary duty requirements pursuant to the Texas Trust Code:

    a)    The duty of loyalty and utmost good faith;

    b)    The duty of candor;

    c)    The duty to refrain from self-dealing;

    d)    The duty to act with integrity; and

    e)    The duty of fair, honest dealing.

95.     Wilson breached his fiduciary duties by:

    a)    Discouraging interested purchasers.

    b)    Failing to provide required information for SEC filings and related audits in order to block a transaction that was worth more than $300 million above previous bids.

    c)    Attempting to sell assets for less than their true market value.

    d)    By accepting compensation on both sides of a transaction.

    e)    By intentionally failing to respond to several interested purchasers.

96.    "An injury is irreparable if the party seeking the injunction cannot be adequately compensated by monetary damages, or if those damages are incapable of calculation—that is, if there is no adequate remedy at law." *Ayiba v. Wells Fargo Bank, N.A.*, No. H-10-5017, 2011 WL 13248493, at *12 (S.D. Tex. Dec. 5, 2011). The danger of a sale of Clanwilliam at a price far below the value of the assets is real and immediate given that Wilson is currently negotiating terms with TAA for the sale of Clanwilliam and is expected to sign a binding purchase agreement in a matter of weeks if the requested relief is not granted.

97.    Wilson has already shown he is ready and willing to violate the terms of the Trust and sell assets far below their actual value in transactions related to the ECL Trust and the UKAT Trust.

98.    Lindberg, as ultimate beneficial owner of the Clanwilliam Trust assets, will suffer irreparable harm of potentially over $300 million in damages if a sale of Clanwilliam is permitted to go forward at a below market valuation.

99.    Lindberg has no other remedy at law or by contract to prevent the sale of Clanwilliam since Wilson has ignored Lindberg's veto rights on the sale.

100.    When the Petitioner and Respondents are the only parties affected by an injunction, the public interest is a neutral factor. *Belknap*, 2012 WL 3150271, at *3 (citing *Stomans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)). To the extent this court considers the public interest, granting a preliminary injunction to prevent any action to further the sale of Clanwilliam will serve the public interest by ensuring that Clanwilliam

**Petitioner's Original Complaint and Request for Injunctive Relief**                    P a g e | **18**

is only sold at its fair market value, thus providing maximum benefit to the insurance lenders which are relying on Clanwilliam as collateral for their loans.

101.    Ultimately, thousands of insurance company policyholders are relying on the value of Clanwilliam assets as security for their policy benefits. Allowing Wilson to pursue a sale of Clanwilliam for his own interests directly harms these policyholders by up to $300 million.

102.    There is no harm in enjoining any sale from occurring given that the largest insurance lender to the intermediate holding company that owns Clanwilliam has stated that they "are not interested in payoffs at this time" and the debt owed by the parent company of Clanwilliam to this insurance lender is not due until June 30, 2029.

103.    Wilson is pursuing a sale of Clanwilliam for his own interests and the interests of his law partners at Latham & Watkins, not because of any demand from the largest insurance lender to Lindberg's group of companies for a payoff.

104.    Furthermore, the sale is being advanced without any comprehensive plan on how the proceeds from the sale of Clanwilliam will ultimately be part of the full payoff of policyholders of the insurance lenders which have lent funds to Clanwilliam's parent company.

105.    Lindberg has repeatedly demanded a full global resolution for policyholder payoffs and these requests have been repeatedly ignored. Lindberg has also presented numerous plans for a full global resolution of all obligations owed to the insurance lenders and Lindberg's proposals have been repeatedly rejected without explanation.

**Petitioner's Original Complaint and Request for Injunctive Relief**

106.    Upon information and belief, the sale of Clanwilliam is being undertaken solely for the benefit of Wilson, his partners, his partner's clients, and for the benefit of M3 Partners, a financial consultant and "chief restructuring officer" for the intermediary holding company which owns Clanwilliam.

107.    Over Lindberg's objections, M3 Partners has demanded over $1 million per month in fees and has suggested that the Clanwilliam sale proceeds be used to pay these fees through the maturity date of the debt to the insurance lenders of June 30 2029, amounting to over $52 million in fees.

108.    At a board meeting in December of the intermediary holding company which owns Clanwilliam, one of the directors which has a business relationship with M3 Partners was explicit in requesting that the minutes of the meeting reflect that "proceeds of the sale of Clanwilliam can be used to pay M3 Partner's fees."

109.    Upon information and belief, Wilson has made a side deal with M3 Partners where he agreed to resign from the trust that owns Beckett Collectibles (which is headquartered in Plano, TX) in exchange for M3 Partners appointing its own employees to the Triton board to attempt to force a sale of Clanwilliam despite Mr. Lindberg's veto rights over such sale.

110.    On December 23, 2024, acting primarily to secure access to a source of funding for its large fees, M3 Partners did in fact appoint three of its own employees to the Triton board.

111.    After stacking the Triton board with three of its own employees, these M3

employees proceeded to conduct a wholly unlawful vote in favor of the Clanwilliam sale in violation of Lindberg's veto right over such sale as provided by the operating agreement of the intermediary holding company which owns Clanwilliam.

112.    Triton is a company incorporated in Ireland and under Irish law if a director has a conflict of interest, they are required to abstain from voting on the relevant decision.

113.    M3's employees voting for the sale of Clanwilliam to allow M3 to receive large fees from the proceeds of such sale is clear conflict of interest that requires these directors to abstain from the vote under Irish law.

114.    Given the above, it's clear that the threat of up to $300 million in irreparable harm to policyholders, lenders, and Lindberg from the sale of Clanwilliam at far below its market value is imminent. An injunction will preserve the status quo while the claims herein are adjudicated by this court.

115.    An injunction will also preserve the status quo relating to recent joint filings by Lindberg and the United States of America in Federal Court.

116.    Upon a joint motion of Lindberg and the United States of America on December 20, 2024, a Special Master relating to certain of Lindberg's assets including Clanwilliam was requested to be appointed by the Federal Court for the Western District of North Carolina. An injunction will preserve the status quo until such Special Master is in place and able to exercise the authority granted by the Federal Court.

117.    The joint motion of Lindberg and the United States of America specifically proposes that the Special Master shall seek approval from the Federal Court in the Western

District of North Carolina before any asset sale occurs related to assets under the Special Master's authority.

118. Upon entry of the order jointly requested by Lindberg and the United States of America, Clanwilliam will be included in the assets under the Special Master's authority. An injunction will preserve the status quo until such time as the Federal Court in the Western District of North Carolina approves any transaction recommended by the Special Master.

119. In light of the above, the Petitioner has demonstrated all of the *Winter* factors required for the issuance of a preliminary injunction. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

120. The Preliminary Injunction is necessary to prevent immediate irreparable harm to Petitioner. The damage incurred to Petitioner from Respondents' continuing breach of contractual duties, tortious interference with prospective business relations cannot be offset by monetary damages at trial.

121. Such an injunction is necessary to ensure the continued and successful operation of Clanwilliam, the preservation of the value of Clanwilliam for policyholders, and to ensure that Clanwilliam is not sold primarily for the purpose of funding over $50 million in fees to M3 Partners and Wilson's own interests.

### JURY DEMAND

122. Petitioner requests a jury trial. See FRCP §38(b)

**WHEREFORE**, Petitioner Greg E. Lindberg, respectfully requests the Court enter

judgment in his favor and against Respondent as follows:

a.  **Void all transactions** entered into by the Trustee to sell assets of the Trusts over the objection of Petitioner and/or the beneficiaries or to impose a lien or constructive trust on trust property;

b.  **Enjoin** the sale of Clanwilliam Group and any other asset of the Trusts to any party until a replacement trustee can be named and until the Federal Court in the Western District of North Carolina approves any such transaction;

c.  Ordering the Trustee to perform the Trustee's duty to provide **financial records** for all entities the trusts hold interests;

d.  Appoint a **special fiduciary** to take possession of all property of the Trusts and administer each trust related to Lindberg's assets with such special fiduciary being approved in all cases by the Special Master relating to certain of Lindberg's assets that has been requested to be appointed by the Federal Court for the Western District of North Carolina;

e.  **Remove** the Trustee from all Trusts;

f.  Enjoin the Trustee from **selling any property** held in any of the Trusts while these matters are being adjudicated;

g.  Compel the Trustee to return excess fees billed to each Trust and to **disgorge all compensation** billed during his period of

mismanagement and self-dealing;

h.    **Sanction** the Trustee;

i.    **Awarding** Petitioner Attorney's fees; and

j.    For any such further relief as the Court deems just and proper.

## VERIFICATION AND ACKNOWLEDGEMENT

**I declare under the penalty of perjury under the laws of Texas that the foregoing is true and correct.**

_____
Greg Lindberg, Petitioner, Pro Se

Dated: January 9th, 2025

**Petitioner's Original Complaint and Request for Injunctive Relief**