# EXHIBIT A

EXECUTION VERSION

DATED    4 November    2020

**TRITON FINANCIAL LIMITED**

**AND**

**GEORGE A. VANDEMAN**

**AND**

**HUGH S. WILSON**

---

**IRREVOCABLE TRUST INSTRUMENT**

RELATING TO A CHANGE OF CONTROL TRUST
FOR THE CLANWILLIAM GROUP

---

# LATHAM & WATKINS

London
99 Bishopsgate
London EC2M 3XF
(44) 020 7710 1000 (Tel)
(44) 020 7374 4460 (Fax)

# TABLE OF CONTENTS

## CONTENTS

**Clause**                                                                                          **Page**

1.     DEFINITIONS AND INTERPRETATION ................................................................. 3
2.     ESTABLISHMENT OF TRUST .............................................................................. 7
3.     DURATION OF THE TRUST .................................................................................. 8
4.     POWERS OF THE TRUSTEE ................................................................................. 8
5.     EXERCISE OF POWERS AND RESTRICTIONS ON EXERCISE .................... 9
6.     TRUSTEE WARRANTIES AND UNDERTAKINGS .......................................... 10
7.     POWERS OF THE BENEFICIARY ...................................................................... 11
8.     PROVISION OF INFORMATION TO TRUSTEES ............................................. 11
9.     CONFIDENTIALITY .............................................................................................. 11
10.    RESIDUAL TRUSTS AND END OF TRUST PERIOD ...................................... 12
11.    TREATMENT OF DIVIDENDS ............................................................................ 12
12.    VOTING ................................................................................................................... 12
13.    INDEPENDENCE OF CLANWILLIAM GROUP BOARDS ............................. 13
14.    EXONERATION OF TRUSTEES .......................................................................... 13
15.    INDEMNITY ............................................................................................................ 14
16.    APPOINTMENT, RETIREMENT AND REMOVAL OF TRUSTEES ............. 14
17.    REMUNERATION AND PAYMENT OF TRUST COSTS .................................. 16
18.    CLAIMANT'S OBLIGATIONS ............................................................................. 16
19.    RIGHTS OF SETTLOR CREDITORS .................................................................. 16
20.    TAX MATTERS ...................................................................................................... 16
21.    NOTICES .................................................................................................................. 17
22.    AMENDMENT OF TRUST INSTRUMENT ........................................................ 17
23.    ACKNOWLEDGMENTS REGARDING SECURITY INTERESTS .................. 17
24.    COUNTERPARTS ................................................................................................... 18
25.    ASSIGNMENT ......................................................................................................... 18
26.    THIRD PARTY RIGHTS ........................................................................................ 18
27.    LAW ......................................................................................................................... 18
SCHEDULE 1  ADMINISTRATIVE POWERS ............................................................. 1
SCHEDULE 2  TRUSTEE REMUNERATION ............................................................... 2

EU-DOCS\29987307

**THIS TRUST INSTRUMENT** is made the   4   day of   November  2020

**BETWEEN:**

(1)   **TRITON FINANCIAL LIMITED** a company registered in Ireland (no. 534652) whose registered office is at Office Suite 17, The Courtyard Carmanhall Road Sandyford, Dublin 18 Ireland ("**the Settlor**");

(2)   **GEORGE A. VANDEMAN** whose address is at 7906 Berger Avenue, Playa Del Rey, CA 90293 USA ("**George A. Vandeman**");

(3)   **HUGH S. WILSON** whose address is at 575 Circle Drive, Denver, Colorado 80206-4112 USA ("**the Original Trustee**"); and

each, a "**Party**" and together, the "**Parties**"

**RECITALS**

A.   The Settlor, as legal and beneficial owner of the entire issued share capital of the Company (as defined below), has resolved to put in place the trust constituted by this Instrument so that, during its term, GL (as defined below) shall not have any ability to direct or influence save in the limited situations specified by this Instrument, or continue to be the ultimate beneficial owner of, the Clanwilliam Group (as defined below).

B.   As more particularly set out in the terms of this Instrument the assets to be acquired by the Trust shall be the entire issued and outstanding and future class of A Ordinary shares of EUR 0.00001 each in the capital of the Company (as defined below) (the "**A Ordinary Shares**") representing 100 per cent of the voting rights available to members of the Company and related rights, the Trust is irrevocable and only capable of dissolution in limited, prescribed circumstances, the Trustees are and will be independent of GL and shall not include a Restricted Person and the Beneficiaries shall not include GL or any GL Affiliate (as defined below).

C.   The Settlor and the Original Trustee shall enter into the Trust Note (as defined below).

D.   The Trust hereby created shall, save to the extent expressly or impliedly excluded, be made subject to the provisions of the Trustee Act 1925 and the Trustee Act 2000.

**NOW THIS INSTRUMENT WITNESSES** as follows:

**1.     DEFINITIONS AND INTERPRETATION**

1.1     In this Instrument unless the context otherwise requires the following expressions have the following meanings respectively:-

"**Adverse Proceeding**" means the appeal and final resolution of the jury verdict in the trial of Greg Lindberg in the Western District of North Carolina;

"**Beneficiary**" means George A. Vandeman or such other person or persons as designated from time to time by the Settlor as a Beneficiary in addition to or in place of George A. Vandeman or any other Beneficiary so designated (or both) by giving no less than 5 business days' notice in writing of such designation to the Trustees, provided that such person shall not include GL or any GL Affiliate;

"**Clanwilliam Group**" means together or separately the Company and any subsidiaries and subsidiary undertakings of the Company from time to time;

3

"**Code**" means the Internal Revenue Code of 1986 of the United States, as amended from time to time;

"**Company**" means Clanwilliam Headquarters Limited a company registered in Ireland (no. 607970) whose registered office is at Office Suite 17, The Courtyard Carmanhall Road Sandyford, Dublin 18 Ireland;

"**Control**" means with respect to any specified person, the power to direct the management and policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" shall have meanings relative to the foregoing. Without limiting the generality of the foregoing, a person shall be deemed to Control any other person in which it owns, directly or indirectly, more than 50% of the ownership interests;

"**Disposition**" means a sale encumbrance, lien on or other disposition or disposal of all or any portion of the Trust Assets directly or indirectly; any partial disposition via issuance of shares, restricted shares; any issuance of employee stock-based compensation; the sale or other disposition of all or a material portion of the assets of the Company or any subsidiary; or the merger or other conversion of the Company; other than by reason of (i) any enforcement action taken under any of the Security Documents; or (ii) the application of such Trust Assets towards the Trust Costs as permitted herein;

"**Facility Agent**" means Global Loan Agency Services Limited in its capacity as facility agent for the Finance Parties as defined in the Senior Facility;

"**Further Share Charge and Security Assignment**" means a share charge and security assignment entered into on or about the date of this Instrument by the Original Trustee in favour of the Security Agent, granting security over the Shares, Receivables and related rights;

"**GL**" means Greg Lindberg whose address is at 410 S. Rampart #390, Las Vegas, NV 89145.

"**GL Affiliate**" means (i) Global Growth Holdings Inc.; (ii) a corporation, limited partnership, general partnership, limited liability company, joint venture, association, company or other organisation under the Control of GL or Global Growth Holdings Inc.; and (iii) any person with a familial relationship with GL including, but not limited to, GL's current, former or (if applicable) future spouse or any of GL's children (natural or adopted);

"**Global Growth Holdings Inc.**" means Global Growth Holdings Inc., a company registered in Delaware (no. 7918372) whose registered office is at 251 Little Falls Drive, Wilmington, Delaware 19808, c/o Corporation Service Company, United States;

"**Group Company**" means any company within the Clanwilliam Group;

"**Intercreditor Agreement**" means the intercreditor agreement dated 8 November 2018, as amended from time to time, made between, among others, the Company, the Debtors (as defined in the Intercreditor Agreement), the Security Agent, the Facility Agent and the Settlor (as Original Subordinated Creditor);

"**Maturity Date**" means the earlier of:

(a)     the occurrence of a Disposition involving the sale or transfer of all Trust Assets;

(b)     the enforcement of Transaction Security (as defined in the Intercreditor Agreement) pursuant to clause 10 (*Enforcement of Transaction Security*) of the Intercreditor Agreement, which results in the sale or transfer of all Trust Assets; or

(c)     the date of 30 September 2030;

4

"**Original Security Assignment**" means a security assignment entered into by the Settlor in favour of the Security Agent, in respect of any Receivables and Related Rights (as defined therein), dated 8 January 2019;

"**Original Share Charge**" means a share charge entered into by the Settlor in favour of the Security Agent, granting security over the Shares and Related Investment Rights (as defined therein), dated 8 November 2018;

"**Original Trustee**" has the meaning given in the Parties section of this Instrument;

"**person**" means a natural person, corporation, limited partnership, general partnership, limited liability company, joint venture, association, company, trust, bank trust company, land trust, business trust, statutory trust, or other organisation, whether or not a legal entity, and a government or agency or political subdivision thereof;

"**Receivables**" has the meaning given in the Original Security Assignment;

"**Regulations**" means U.S. Treasury Regulations promulgated under the Code;

"**Related Trustee**" means a trustee in respect of a trust settled by Global Growth Holdings, Inc. or any other GL Affiliate or business interest of GL from time to time where such trustee is required pursuant to the relevant terms of the trust to act independently from GL, any GL Affiliate or any business interest of GL provided that such trustee does not have a personal or other relationship (apart from a business relationship in its role as such a trustee);

"**Representatives**" means, in relation to a Party, its respective employees, agents, external legal advisers, accountants, consultants and financial advisers and, in the case of a company, also its respective directors and officers and providers of finance (and any of their respective employees, agents and external advisors);

"**Restricted Person**" means GL, any GL Affiliate and any other person who has personal, contractual, business, familial or other relationship with GL, Global Growth Holdings Inc. or any other of GL's Affiliates or business interests from time to time, in each case extending to any entity that was a GL Affiliate even if they are no longer a GL Affiliate but for the purposes of this definition: (i) a GL Affiliate shall exclude any existing member of the board of directors of an existing Group Company; and (ii) an individual shall not be considered to be a Restricted Person solely by reason of being a Related Trustee (and being party to agreements relating to their performance of that role);

"**Security Agent**" means GLAS Trust Corporation Limited in its capacity as security agent for the Secured Parties as defined in the Senior Facility;

"**Security Documents**" means the Original Share Charge, the Original Security Assignment, the Further Share Charge and Security Assignment; and the Intercreditor Agreement;

"**Senior Facility**" means the senior term facilities agreement dated 8 November 2018, as amended from time to time, made between: (i) the Company; (ii) the Original Borrowers (as defined therein); (iii) the Original Guarantors (as defined therein); (iv) CEDL I S.À R.L., CEDL I (Levered) S.À R.L., Alcentra European Direct Lending (Levered) Fund II (Holding) SCSP, CEDL SMA S.À R.L., CEDL III S.À R.L., CEDL III (Levered) S.À.R.L. and Alcentra European Direct Lending (Levered) Fund III (Holding) SCSP (together, the "**Alcentra Lenders**"); (v) the Original Lenders (as defined therein); (vi) the Facility Agent; and (vii) the Security Agent;

"**Senior Lenders**" means the Alcentra Lenders or the Lenders (as defined in the Senior Facility);

EU-DOCS\29987307

"**Settlor Group**" means together or separately the Settlor and any subsidiaries and subsidiary undertakings of the Settlor from time to time;

"**Shares**" means all of the class A Ordinary shares in the Company issued and outstanding on or around the date of this Instrument pursuant to the Subscription Letter, together with any future class A Ordinary shares in the Company issued or transferred to the Trustees to hold on the terms of the Trust;

"**Subscription Letter**" means the letter dated the same date as this Instrument pursuant to which the Original Trustee subscribes for the Shares;

"**Tax**" means:

(a)     all taxes, levies, imposts, duties, social security contributions, surcharges, charges or withholdings, in each case in the nature of taxes, whether of Ireland or elsewhere and shall include any amount payable as a consequence of any claim, direction, order or determination of any tax authority competent to impose, administer, levy, assess or collect any of the foregoing;

(b)     any amount of tax which is the subject of or results in a charge, security or right to sell imposed by, or provided by statute to, a tax authority over any of the assets of the Trust; and

(c)     all interest, penalties, surcharges, fines and other charges relating to any of the above or to a failure to make any return, comply with any reporting requirements or supply any information in connection with any of the above and the cost of removing any charge or other encumbrance imposed by a tax authority,

whether or not directly or primarily chargeable against or attributable to the Trustees and regardless of whether any Trustees has, or may have any right of reimbursement against any other person;

"**Trust**" means the trust created by this Instrument;

"**Trust Assets**" means the Shares, and all cash, property income, capital accretion or otherwise representing or derived from the Shares, any receivables and all related rights during the Trust Period (including all Related Investment Rights under and as defined in the Original Share Charge) and such other assets (if any) as the Trustees may come to hold on the terms of the Trust following the date of this Instrument;

"**Trust Costs**" has the meaning given in Clause 17.2;

"**Trust Documents**" means this Instrument and the Trust Note;

"**Trust Note**" means the promissory note dated on or around the date of this Instrument issued to the Settlor by the Trustees;

"**Trust Period**" has the meaning given in Clause 3; and

"**Trustees**" means the Original Trustee while serving as trustee and such other person or persons as may be the trustees or trustee in place of or in addition to the Original Trustee for the time being, appointed by the Settlor in accordance with Clause 14 and "**Trustee**" means any one of them.

For the purpose of the interpretation of this Instrument:

(a)     words denoting the singular shall include the plural and vice versa;

6

(b)     words denoting the masculine gender shall include the feminine gender and vice versa;

(c)     no account shall be taken of clause headings which have been inserted for ease of reference only;

(d)     references to any statutory provision shall be read and construed to references to such provision as is amended or re-enacted from time to time;

(e)     references to clauses and Schedules are to be read and construed as references to clauses and Schedules of this Instrument;

(f)     general words shall not be given a restrictive meaning because they are followed by words which are particular examples of the acts, matters or things covered by the general words and "including", "include" and "in particular" shall be construed without limitation;

(g)     references to a person's loss of or ceasing to have "capacity" or being subject to an "incapacity" or similar shall mean any legal, physical or mental disability which renders that person incapable of managing his own affairs or in the case of a Trustee the administration of the Trust and the decision of the Settlor reached in good faith and after such inquiry as the Settlor deems appropriate as to when such disability exists or ceased to exist or does not exist shall be conclusive and binding and neither the Settlor nor the Trustees shall be liable for any action which may be taken by them or any other person pursuant to any such decision;

(h)     a reference to the Settlor shall include, where appropriate, any successor company resulting from any reconstruction or amalgamation of the Settlor; and

(i)     a reference to the Facility Agent and the Security Agent shall include that person's (and any subsequent) successors in title, permitted assignees and permitted transferees and any person for the time being appointed Facility Agent in accordance with the Senior Facility and any person for the time being appointed as Security Agent in accordance with the Debt Documents (as defined in the Security Documents), as the case may be.

## 2.    ESTABLISHMENT OF TRUST

2.1    The Settlor and the Original Trustee by execution of this Instrument intend to and establish the Trust which shall operate as an irrevocable trust and shall be administered by the Trustees in accordance with this Instrument.

2.2    The Original Trustee shall be the first Trustee of the Trust.

2.3    The Settlor shall have the power to designate from time to time any person or persons to be a Beneficiary whether in addition to or in place of George A. Vandeman or any other Beneficiary so designated (or both) by giving no less than 5 business days' notice in writing of such designation to the Trustees, provided that such person shall not include GL or any GL Affiliate and such a designation may specify the shares in which the Beneficiaries shall be entitled to the Trust Assets. The Settlor shall promptly provide a copy of any such notice to the Facility Agent.

2.4    On every change in the Beneficiaries in accordance with Clause 2.3 a memorandum should be endorsed on or permanently annexed to this Instrument stating the names and addresses of the persons who are the Beneficiaries for the time being. The Trustee shall be entitled to rely on such memorandum (of the latest memorandum if more than one) as sufficient evidence that the persons named therein are duly designated Beneficiaries.

EU-DOCS\29987307

2.5     The Trustees shall hold the Trust Assets during the Trust Period on trust for each Beneficiary equally or in such shares as may be designated by the Settlor in any notice designating a Beneficiary.

## 3.     DURATION OF THE TRUST

3.1     Subject to Clause 3.2 below, the Trust shall remain in existence and endure for the period beginning on the date of this Instrument and ending on the first occurring of:

(a)     the reversal of the conviction in the Adverse Proceeding via reversal, acquittal, dismissal, final decision of the government to not re-try the case following any mistrial or remand for new trial, pardon, commutation or other exoneration or discharge of any sentence, provided such reversal, acquittal, dismissal or decision is final with no further right to appeal, retrial or other recourse available to the government, together with written confirmation from the Company that the expiration of the Trust will not materially adversely affect the operations of the Group (to be determined in consultation with the Facility Agent (acting on the instructions of the Senior Lenders)); or

(b)     the Trustees being satisfied (having consulted with the board of the Company) that the Trust is no longer required by reason of another trust having been interposed in the ownership structure such that no Restricted Person will become the ultimate beneficial owner of the Group following termination of the Trust; or

(c)     the death of GL; or

(d)     the Maturity Date; or

(e)     the termination of the Trust as required pursuant to a final and binding court order,

(the "**Trust Period**").

3.2     The Trust Period shall only end in accordance with Clause 3.1 above if;

(a)     the Trustee has notified the Facility Agent if any of the above events occur; and

(b)     in each case;

(i)     any time up to and including the Discharge Date (as defined in the Intercreditor Agreement), security has been or will be put in place to replace the security granted pursuant to the Security Documents in a form and substance satisfactory to the Security Agent; or

(ii)     the Security Agent has confirmed in writing that the Security Period has ended under the relevant Security Documents at that time.

## 4.     POWERS OF THE TRUSTEE

4.1     Subject to the provisions of Clause 5 below, The Trustees shall have all powers necessary and desirable to exercise all rights, privileges and discretions related to the Trust Assets at their absolute discretion including, but not limited to, those powers as set out in Schedule 1 to this Instrument insofar as the exercise of those powers shall not be inconsistent with the trust created by this Instrument.

4.2     During the Trust Period, without prejudice to Clause 10.1 the Trustees shall use all powers available to them pursuant to this Instrument to procure that no part of the Trust Assets (including the Shares and any other Trust Assets from time to time) shall be transferred directly

or indirectly to a Restricted Person and such Trust Assets shall, at all times until the Discharge Date (as defined in the Intercreditor Agreement) remain subject to the security created in favour of the Security Agent.

4.3 Each power shall be a separate power in addition to and without prejudice to the generality of all other powers vested in the Trustees, subject to the provisions of Clause 5 below and the Trustees may exercise all or any of those powers from time to time, without the intervention of any Beneficiary, in such manner and to such extent as the Trustees in their absolute discretion see fit.

4.4 In the exercise of their powers and discretions, the Trustees may consider any recommendations made to them by the Company's board of directors but the Company's board of directors shall have no power to direct the Trustees to comply with such recommendations.

4.5 Notwithstanding the powers conferred on the Trustees by virtue of this Instrument or applicable law, none of the Trustees shall be obliged by this Instrument or by applicable law to perform any service or action other than or additional to:

(a) being the legal owner(s) of the Shares and any other Trust Asset, subject to and in accordance with this Instrument for the benefit of the Beneficiary;

(b) attending, in person or by proxy, and voting at the extraordinary general meetings or annual general meetings of the Company;

(c) complying with the obligations of the Trustee under this Instrument, the Trust Note and the Security Documents; and

(d) making a Disposition of Trust Assets back to the Settlor in accordance with this Instrument,

without prejudice to the foregoing the Trustees shall not owe a duty of care to any Group Company.

## 5.    EXERCISE OF POWERS AND RESTRICTIONS ON EXERCISE

5.1 No power, authority or discretion conferred on the Trustees by this Instrument or by law shall (despite anything to the contrary expressed or implied in this Instrument) be exercised if it causes any part of the Trust Assets to become applicable for the benefit of a Restricted Person (provided, however, that it is stipulated that a payment of any amounts owing to the Settlor pursuant to Clause 10.1, or any payments on the Trust Note, whether of principal, fees, or interest, shall not be a violation hereof) and shall not constitute a Disposition.

5.2 The Trustees shall:

(a) not make or enter into an agreement to make a Disposition (including pursuant to paragraph (b) below) without the prior written consent of the Settlor;

(b) not make a Disposition to the Settlor or any Restricted Person other than upon expiry of the Trust Period by reason of the events or circumstances described in sub-Clause 3.1(a); and

(c) to the extent that is reasonably practicable, co-operate with the Settlor in respect of a broader refinancing of the Settlor Group.

5.3 The Trustees shall use such powers as are then available to it in their capacity as registered holder of the Shares to procure that:

9

(a) no Group Company shall enter into any arrangements in respect of any refinancing of the Senior Facility without the prior written approval of the Settlor; and

(b) the Clanwilliam Group shall, to the extent that is reasonably practicable, co-operate with the Settlor in respect of a broader refinancing of the Settlor Group.

5.4 The Trustees shall not and are not permitted to perform any business of the Trust in the Republic of Ireland.

## 6. TRUSTEE WARRANTIES AND UNDERTAKINGS

6.1 Each Trustee hereby warrants, represents and undertakes to the Settlor that:

(a) Save, in the case of a Trustee that is a Related Trustee, in relation the representations below which relate to its business relationship or fees received in connection with any Related Trustee role that the relevant Trustee holds from time to time (and any agreements relating to the performance by the Trustee of that role):

    (i) it is independent of, and not associated with, and does not have any personal, business or other relationship with, GL, any GL Affiliate or any Restricted Person;

    (ii) it is, independent of, and not associated with, and does not have any personal, business or other relationship with any entity, business, asset or person owned by GL any GL Affiliate or any Restricted Person or, to the best of its knowledge, any entity, business, asset or person controlled, directly or indirectly, GL, any GL Affiliate or any Restricted Person; and

    (iii) to the best of its knowledge and belief, it has not received any financial support or assistance, other than the Fees paid or payable by the Trust under this Instrument, from GL, any GL Affiliate or any Restricted Person;

(b) excluding the Trust Assets and any assets of any trust of which the relevant Trustee is a Related Trustee, it does not own, directly or indirectly, any shares, rights, warrants or options to acquire or subscribe for, any shares or other securities, any other voting interest, or any property or interest in property in the Company or any entity owned or controlled by GL ,any GL Affiliate or any Restricted Person;

(c) it is capable of and shall at all times perform its duties as Trustee independent of, and without any influence from, GL, any GL Affiliate or any Restricted Person;

(d) it is capable of and shall at all times perform its duties as Trustee in accordance with all applicable laws;

(e) it is not and will not become resident in the United Kingdom for United Kingdom tax purposes and does not and will not act as Trustee in the course of a business which it carries on in the United Kingdom through a branch, agency or permanent establishment there; and

(f) it is not and will not become a Restricted Person.

6.2 Each Trustee covenants and undertakes to the Settlor to ensure that the matters as set out in sub-clauses 6.1(a)(i) to 6.1(f) shall remain true and correct for as long as it remains a trustee of the Trust.

10

7.    **POWERS OF THE BENEFICIARY**

7.1    Save as provided by law, the Beneficiaries shall have no powers in the respect of the Trust or the Trust Assets during the Trust Period.

8.    **PROVISION OF INFORMATION TO TRUSTEES**

8.1    The Trustees shall be entitled to rely upon any information relevant to the Trust and the Trust Assets supplied to them by the Settlor, by the Facility Agent, by the Security Agent or by any Group Company, or any Representative or agent thereof, as conclusive evidence of the matter to which it relates and without prejudice to the generality of Clause 15 shall (fraud, wilful misconduct and gross negligence excepted) be in no way liable to the Settlor, the Beneficiary or any other person claiming for any loss caused or allegedly caused as a consequence of the Trustees relying on such information.

8.2    Without prejudice to the Trustee's duties in respect of the Trust, the Trustees may but are not required to retain at the expense of the Trust and to rely upon the expertise of independent consultants in performing their duties.

8.3    The Settlor and the Beneficiary confirm that the Trustees shall be entitled to rely on (i) Principal Amount of the Trust Note as being representative of fair market value for the Shares; and (ii) a rate of 25% as being an appropriate rate of interest, in each case as at the date of this Instrument for the purpose of agreeing the principal value and rate of interest to be included in the Trust Note and in full satisfaction of the Trustee's duties to agree the same under the Trust.

9.    **CONFIDENTIALITY**

9.1    Subject to Clauses 9.2 and 9.3, each Party:

   (a)    shall treat as strictly confidential the provisions of this Instrument and any confidential information relating to the Clanwilliam Group which they receive in connection herewith (whether before or following the date of this Instrument) (together "**Confidential Information**"); and

   (b)    shall not, except with the prior written consent of the other Parties (which shall not be unreasonably withheld or delayed), make use of (save for the purposes of performing its obligations under this Instrument) or disclose to any person (other than its Representatives in accordance with Clause 9.2) any Confidential Information.

9.2    Clause 9.1 shall not apply if and to the extent that the Party using or disclosing Confidential Information can demonstrate that:

   (a)    such disclosure is or reasonably appears to be required by law or by any stock exchange or any supervisory, regulatory, governmental or anti-trust body having applicable jurisdiction, (including, for the avoidance of doubt, any tax authority having applicable jurisdiction); or

   (b)    the Confidential Information concerned has come into the public domain other than through its fault (or that of its Representatives) or the fault of any person to whom such Confidential Information has been disclosed in accordance with this Clause 9.

9.3    Each Party undertakes that it shall (and shall procure that its affiliates shall) only disclose Confidential Information to Representatives where it is reasonably required for the purposes of exercising its rights or performing its obligations under this Instrument or the other Trust Documents and only where the Representatives are informed of the confidential nature of the Confidential Information and the provisions of this Clause 9. In addition, the Parties agree that to the extent that any public communication, press announcement or any formal communication

11

is required to be made in connection with this Instrument and the matters contained herein, each Party shall, acting in good faith, consult with the other Parties and take into account any reasonable feedback prior to making such announcement or communication.

9.4    The provisions of this Clause 10 shall survive termination or lapse, as the case may be, and shall continue for a period of five years from the date of this Instrument or (if later) two years from the date following the termination of this Instrument.

9.5    In no event shall any Trustee be required to make a public announcement or communication, save for any announcements or communication required by applicable laws or regulation.

## 10.    RESIDUAL TRUSTS AND END OF TRUST PERIOD

10.1    At the end of the Trust Period, the Trust Assets shall be first used to settle in full all amounts owing on the Trust Note and, subject to (i) full repayment and settlement of the Trust Note; and (ii) the Discharge Date (as defined in the Intercreditor Agreement) having occurred, the Trustees shall (subject to any prior exercise by them of their powers under this Instrument) make arrangements for the distribution of any residual Trust Assets to one or more of the Beneficiaries then living and in such proportion(s) equally or otherwise as may have been designated in writing to the Trustees by the Settlor.

10.2    Subject to the terms of the Senior Facility, a transfer by the Trustees to the Settlor of the Trust Assets (including the proceeds of any Disposition) on the Maturity Date or, if earlier, the termination of this Instrument shall constitute the payment to the Settlor by the Original Trustee or any other Trustee who has acceded to the Trust Note as debtor of the Principal Amount (as defined in the Trust Note) plus all accrued but unpaid interest (after provision of all Trust Costs) in full, regardless of whether the value of the Trust Assets shall have decreased below the outstanding balance of the Principal Amount (as defined in the Trust Note) (plus all accrued but unpaid interest) at the time of such payment.

10.3    For the purposes of valuing the Shares at the end of the Trust Period the Trustees shall use a valuation multiple no greater than the valuation multiple used to determine the Principal Amount in the Trust Note (being a valuation multiple of 16.1 x EBITDA on a debt free cash free basis).

## 11.    TREATMENT OF DIVIDENDS

11.1    Subject to Clause 11.2, following any deductions required for all Trust Costs as set forth in Clause 17, the Trustee shall use all net cash from any cash dividends received by the Trust in relation to the Shares to make interest payments in respect of the Trust Note pursuant to the terms as set out in therein and such payment shall not be deemed to be Disposition.

11.2    The Trustees acknowledge that dividends shall only be made by the Company on the Shares in compliance with law and subject to the terms of the Senior Facility.

## 12.    VOTING

12.1    Subject to the provisions in Clause 5, the Trustees shall be entitled to vote in respect of the Shares held in the Trust Assets at any general meeting of the Company.

12.2    None of the Beneficiaries and no Restricted Person shall be entitled in any way to compel, control or force the exercise in any particular manner of any voting or other rights which may from time to time be exercisable by the Trustees.

12.3    The Trustees shall be entitled to rely on all information as set forth in Clause 8 in exercising their rights to vote Shares.

EU-DOCS\29987307

13. **INDEPENDENCE OF CLANWILLIAM GROUP BOARDS**

13.1    During the Trust Period, the Trustees shall use such powers as are available to them in their capacity as registered holder of the Shares to procure that there shall be:

(a)    no change to the board of directors of the Company, except in the event of death, resignation or disability of a director; and

(b)    no Restricted Person shall be a member of any board of directors of any member of the Clanwilliam Group.

13.2    The Trustee(s) shall consult with the Senior Lender prior to any changes to the board of directors of the Company; or any board of directors of any other member of the Clanwilliam Group in so far as the Trustee is aware of any proposed change to the board of directors of any member of the Clanwilliam Group.

14. **EXONERATION OF TRUSTEES**

14.1    None of the Trustees shall be liable for any loss or damage to the Trust Assets or the income thereof arising from any improper investment or purchase made or retained by the Trustees or other action taken or omitted to be taken by the Trustees (subject to the terms of this Instrument) in good faith unless such loss or damage is attributable to fraud, wilful misconduct or gross negligence on the part of the Trustees (or any of them).

14.2    The Trustees shall:

(a)    be under no obligation to procure that the Trust prospers;

(b)    be under no obligation to ensure that the Trust Assets increase in value;

(c)    be under no obligation to ensure that Trust diversifies or makes any investment for and on behalf of the Trust;

(d)    save to the extent the same is as a result of the Trustee's own gross negligence, wilful misconduct, bad faith or fraud, not be liable for any loss, reduction in value, destruction, damage, seizure or sequestration of the Trust Assets (or any part thereof) to the Settlor or any Beneficiary; or

(e)    be under no obligation to take any action in relation to the Trust unless that action is appropriately funded in compliance with applicable law from the Trust Assets available to the Trustee.

14.3    Save to the extent the same is as a result of the Trustee's own gross negligence, wilful misconduct, bad faith or fraud, neither the Settlor nor any Beneficiary shall have recourse to any of the personal assets of Trustees as a result of any breach of the terms of this Instrument, including but not limited to any enforcement action brought against the principal private residence or any other residence maintained by any Trustee. Save to the extent the same is as a result of the Trustee's own gross negligence, wilful misconduct, bad faith or fraud, the Trust Assets shall be the only source of funds to satisfy a claim for damages by the Settlor against the Trustee for any reason. None of the Trustees shall be considered to have a conflict of interest by virtue of the fact that any of them have personal investments in industries or businesses of a similar nature of any business or going concern carried out by any part of the Trust Assets from time to time.

14.4    None of the Trustees shall be liable as above for a delegation or appointment made, or permitted to continue, by the Trustees, absent fraud, wilful misconduct or gross negligence.

13

14.5    The duty of care imposed upon the Trustees by law is not excluded by any term of this Instrument.

## 15.    INDEMNITY

15.1    No Trustee shall be liable for any loss or damage to the Trust Assets (or any part thereof) or to the Settlor or any Beneficiary, caused by any act or omission of the Trustee, or other event or thing whatsoever, whether with respect to trust administration, modification, investment, management or distribution, any election, allocation or division, or the purchase or retaining of any property legally requiring remedial action or any other matter pertaining to the Trustee's services as such, unless the loss or damage is due to the Trustee's own gross negligence, wilful misconduct, bad faith or fraud or a breach of the Trustee's obligations under the Intercreditor Agreement (herein "**Indemnified Acts**"). Each Trustee serving at any time with respect to a trust hereunder shall be fully indemnified from the Trust Assets, subject at all times to the provisions of the Senior Facility and the Security Documents, (and thereafter, if the Trust Assets cannot adequately indemnify the Trustees, will be indemnified by the Settlor and the Settlor shall procure indemnification from the Settlor Group) for any liability, attorneys' fees or other reasonable expenses or costs incurred by, or judgment, amount paid in settlement or other damages assessed against, the Trustee with respect to all Indemnified Acts, and such amounts incurred in defending an action brought or threatened in respect of Indemnified Acts may be paid out of the Trust Assets in advance of final disposition upon delivery to the Settlor of a legal opinion of trust counsel that indemnification is likely to be warranted and the Trustee's written agreement to refund such amounts if it is ultimately determined that indemnification is not warranted.

15.2    Unless the Trustees have actual notice that an event has occurred affecting the beneficial interests in any trust hereunder, the Trustees shall not be liable to any beneficiary for distributions made as though the event had not occurred.

15.3    In addition, the Trustee shall have the benefit of all powers, privileges and immunities conferred upon a trustee by statute or by the law of England and Wales.

15.4    This Clause 15 survives the completion of any Trustee's service as Trustee and the termination of this Instrument.

## 16.    APPOINTMENT, RETIREMENT AND REMOVAL OF TRUSTEES

16.1    Any Trustee may, at any time, by written notice given to the Settlor, the Facility Agent and any co-trustee, retire from office one month after the date when the notice is received by the Settlor and the Facility Agent (or any shorter period agreed in writing by the Settlor and the Facility Agent, acting on the instructions of the Senior Lenders) provided that where the retiring Trustee is the sole Trustee any such retirement shall take effect upon the appointment by the Settlor of a replacement Trustee pursuant to Clause 16.3.

16.2    Following consultation with the Facility Agent (on behalf of the Senior Lenders) the Settlor may:

(a)    remove any Trustee from office by giving 30 days' prior written notice to that Trustee (unless such notice is waived by such Trustee and subject to as provided in Clause 16.3) without giving any reason for the removal. This power can only be exercised if there will be, on the removal, at least one remaining person as Trustee, or if the Trustee simultaneously designates a replacement Trustee;

(b)    appoint a person (or persons) in place of any Trustee who ceases to be a Trustee for any reason; and

(c)    appoint additional Trustees (without limitation as to number),

14

in each case provided that no Restricted Person shall be appointed as a Trustee at any time and provided that the new Trustee(s) shall accede to this Instrument, the Trust Note and the relevant Security Documents and the Intercreditor Agreement.

16.3    In the event that a Trustee gives notice to retire from office, dies, ceases to have capacity, becomes bankrupt or insolvent or unable to pay its debts as they fall due the Settlor shall, following consultation with the Facility Agent (on behalf of the Senior Lenders), replace the relevant Trustee (and in the event of the Trustee's death, loss of capacity, bankruptcy or insolvency, the removal of the relevant Trustee may be made immediately by written notice) provided that no Restricted Person shall be appointed as a Trustee at any time and provided that the new Trustee(s) shall accede to this Instrument, the Trust Note and the relevant Security Documents and the Intercreditor Agreement.

16.4    Subject to the requirements set out in Clause 16.2, any person may be appointed as Trustee, on the terms and conditions the Settlor agrees with that person, wherever that person is domiciled or resident (or is incorporated or carries on business, if it is a corporation), save that no person may be appointed as Trustee if it is resident in the United Kingdom for United Kingdom tax purposes or if it will act as Trustee in the course of a business which it carries on in the United Kingdom through a branch, agency or permanent establishment there or, if it is a corporation, if it is incorporated in any part of the United Kingdom.

16.5    A retiring or removed Trustee shall execute all transfers or other documents, and do all acts necessary to vest the Trust Assets in the new or continuing Trustees. A retiring or removed Trustee who is liable under this Instrument in any way shall not be bound to transfer the Trust Assets unless reasonable security is provided to indemnify that Trustee against the liability. In the event that the retiring or removed Trustee fails to take such acts the continuing Trustee or, in the case where the sole Trustee has retired or been removed, the Beneficiary shall have the power to execute all transfers or other documents, and do all acts necessary to vest the Trust Assets in the new or continuing Trustees, provided that reasonable security is provided to indemnify the retiring or removed Trustee against the liability.

16.6    Unless there is a sole Trustee, this Clause 16.6 shall govern the proceedings of the Trustees:

(a)    the trusts, powers and discretions vested in the Trustees by this Instrument shall be exercised by all the Trustees acting together;

(b)    without prejudice to sub-clause 16.6(a), if there are more than two Trustees then any disagreements between Trustees on the exercise of the trusts, powers and discretions vested in them shall be determined by majority vote;

(c)    without prejudice to sub-clauses 16.6(a) and 16.6(b), if no majority is reached by the Trustees in respect of a matter between Trustees on the exercise of the trusts, powers and discretions vested in them, then the Settlor may pursuant to the terms set out in this Instrument (i) appoint a replacement Trustee; or (ii) appoint an additional Trustee, in each case such that a majority vote can be reached; and

(d)    unless otherwise agreed by the Trustees, a resolution in writing signed by each Trustee (whether on the same document or in counterparts) shall be as valid as if it has been passed at a meeting of the Trustees.

16.7    On every change in the trusteeship a memorandum shall be endorsed on or permanently annexed to this Instrument stating the names of the persons who are the Trustees for the time being and shall be signed by the persons so named. Any person dealing with the affairs of this Trust shall be entitled to rely upon any such memorandum (or the latest of such memoranda if more than one) as sufficient evidence that the persons named therein are duly constituted the Trustees.

15

## 17.    REMUNERATION AND PAYMENT OF TRUST COSTS

17.1    Each Trustee shall be remunerated by the Trust out of the Trust Assets subject to the Senior Facility and the Security Documents in such amount and on such terms as set out in Schedule 2 to this Instrument.

17.2    The Trustees shall, subject at all times to the provisions of the Senior Facility and the Security Documents, pay from the Trust Assets all trust costs and Taxes, including, but not limited to expenses incurred in the establishment of the Trust and any costs and Taxes incurred in connection with the establishment of the Trust, in the administration and devolution of the Trust Assets, the determination and payment of Taxes thereon, the services and expenses of agents retained by the Trustees in execution of their duties and other expenses described in this Instrument (the "**Trust Costs**"), and the Trustees shall be entitled to reimbursement for any Trust Costs incurred and advanced on behalf of the Trust. To the extent that the Trustees consider that there is not sufficient cash in the Trust Assets to pay or reimburse such expenses they shall request payment by the Company and the Company shall, subject to compliance with applicable laws and its obligations under the Senior Facility, the Intercreditor Agreement and the Security Documents, make such payment.

## 18.    CLAIMANT'S OBLIGATIONS

18.1    Any person entitled to, or claiming, any benefit under the Trust shall produce any evidence and information required by the Trustees for the purposes of the Trust. Payment of any benefit under the Trust to any person shall be conditional on that person producing any evidence or information that the Trustees may require.

18.2    The Trustees shall be entitled to deduct from any benefit payable any Tax or duty for which the Trustees are or may be liable in respect of the benefit concerned.

18.3    The Trustees shall not be accountable for, or obliged to see to, the application of any payment made under this Instrument if it is made:

(a)    directly to a minor, to his parent or guardian or to the person with whom he resides; or

(b)    to any individual or institution who or which is or appears to be responsible for the care of a person to whom the payment is otherwise to be made;

if the Trustees in their absolute discretion consider that that person's incapacity does not warrant their making the payment to him direct.

## 19.    RIGHTS OF SETTLOR CREDITORS

19.1    Nothing in this Instrument and the Trust hereby constituted is intended to impact on the rights of any existing creditors of the Settlor or its affiliates.

## 20.    TAX MATTERS

20.1    The Trust shall not constitute a "business trust" within the meaning of Regulations Section 301.7701-4(b) or any other business entity for federal income tax purposes, but shall instead constitute a trust within the meaning of Regulations Section 301.7701-4(c) and a "grantor trust" under Subpart E of Part 1, Subchapter J of the Code (Code Sections 671 and following) in the United States. As such, all income and deductions of the Trust are treated for income tax purposes as income and deductions of the Settlor.

20.2    The Settlor and the Trustees agree that they will file all tax returns in a manner consistent with the intent set out in Clause 20.1 unless otherwise required by a taxing authority. Except as otherwise expressly provided herein, any tax elections required or permitted to be made by the

16

Trust under the Code or otherwise will be made by the Settlor. The Trust will not elect to be treated as a corporation for any tax purpose. In addition, notwithstanding any other provision of this Agreement, the Trustees shall pay to the Settlor such amounts from the net income of the Trust as shall be necessary for the Settlor pay any U.S. or non-U.S. federal, state and local income tax on the net income of the Trust that is required to be paid by the Settlor or its owners pursuant to Subpart E of the Code and the comparable provisions of any state or local income tax law or regulation. For purposes of this Clause 20.2, the "Settlor" shall include the person (individual or entity) ultimately liable for payment of U.S. or non-U.S. federal, state, and local income tax on the income of the Trust that is deemed to pass through the Settlor for Tax law purposes. The amount payable by the Trust to the Settlor for a particular tax period pursuant to this Clause 20.2 shall be determined based on a reasonable estimate of the amount of Tax that would be due based on the highest applicable tax rate applied to the amount of net income of the Trust for that tax period that would be deemed to pass through to the Settlor from the Trust. The Trust shall pay the amount required pursuant to this Clause 20.2 at least 10 days prior to the relevant statutory deadline for payment of the applicable Tax.

20.3    Notwithstanding the foregoing provisions of this Clause 20, if the Trustee shall receive any notice of Tax due or deficiency from any jurisdiction that has or appears to have taxing authority over the Trust, nothing shall prevent the Trustees from satisfying such amounts from the Trust Assets.

## 21.    NOTICES

Any notice or information to be given hereunder by the Settlor to the Trustees shall be validly given if it is signed by any member of the board of directors of the Settlor or such person or persons as are authorised by the Board.

## 22.    AMENDMENT OF TRUST INSTRUMENT

The Trustees may at any time by deed amend any of the provisions of this Instrument in any respect, provided that such amendment shall not have effect if:

(a)    it would affect the purpose of the Trust;

(b)    it would confer on the Settlor or any Restricted Person a benefit or possibility of a benefit out of the Trust Assets or income thereof except to the extent contemplated hereunder and pursuant to the Trust Note;

(c)    it would extend the power conferred in this Clause 22 to remove the restrictions in this Clause;

(d)    it would reduce or adversely affect the right or interest of any Beneficiary insofar as such right or interest has been granted, awarded or allocated pursuant to the prior exercise by the Trustees of their powers under this Instrument;

(e)    the deed making the amendment has not been executed by the Settlor (unless the Settlor is in liquidation or has previously confirmed in writing to the Trustees that its consent to any future amendment is no longer necessary); or

(f)    it would be in breach of the Intercreditor Agreement.

## 23.    ACKNOWLEDGMENTS REGARDING SECURITY INTERESTS

Each Trustee and each Beneficiary hereby acknowledges for the benefit of the Security Agent and the Senior Lenders the security granted over the Trust Assets pursuant to the Security Documents and each Trustee and each Beneficiary irrevocably acknowledges that the Security Agent may take any enforcement action over any or all of the Trust Assets in accordance with

17

the Security Documents (including the exercise of any power of sale, appropriation and appointment of a Receiver (as defined in the Security Documents) over any or all of the Trust Assets and/or the exercise of any powers by any such Receiver in respect of such Trust Assets), and apply the proceeds of any such enforcement action in accordance with the Security Documents without any requirement for further consent from, consultation with or notification to any Trustee or Beneficiary. The occurrence of any such action shall not be deemed a default by any of the Trustees of their obligations hereunder.

## 24.   COUNTERPARTS

This Instrument may be executed in any number of counterparts and by the parties on separate counterparts but shall not be effective until each Party has executed at least one counterpart and each counterpart shall constitute an original of this Instrument but all other counterparts shall together constitute one and the same instrument.

## 25.   ASSIGNMENT

25.1   Without prejudice to the security interests granted pursuant to the Senior Facility, no benefits or rights under this Instrument can be assigned, charged or alienated in any way. No payment shall be made in respect of any benefit or right if:

(a)   the person entitled to it has, to the knowledge of the Trustees, purported to assign or charge that payment (or any part of it or any interest in it); or

(b)   the Trustees know of any act or event which would or may reasonably result in the benefit or right (or any part of or interest in it) belonging to that person to become vested in, or charged in favour of, any person(s) other than that person or his legal personal representatives.

25.2   Subject to other provisions of this Instrument, the Trustees shall have full discretion as to the payment or application of any benefit forfeited to, or for the benefit of, such person.

## 26.   THIRD PARTY RIGHTS

26.1   The named beneficiaries shall be entitled to the rights and benefits of, and rely on, Clause 23 and shall, in each case, have the right to enforce the relevant terms by reason of the Contracts (Rights of Third Parties) Act 1999.

26.2   Except as provided for in Clause 26.1, a person who is not a party to this Instrument shall have no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any of its terms.

26.3   Subject to the provisions of the Intercreditor Agreement, each party represents to the other that their respective rights to terminate, rescind or agree any amendment, variation, waiver or settlement under this Instrument are not subject to the consent of any person that is not a party to this Instrument.

## 27.   LAW

27.1   The Trust and the Instrument and any non-contractual obligations arising out of or in connection therewith shall be governed by and construed in accordance with the laws of England and Wales.

27.2   The Parties (and each Group Company) shall submit to the exclusive jurisdiction of the English courts, in relation to any dispute or claim arising under the Trust, this Instrument or any non-contractual obligation arising out of or in connection therewith, notwithstanding that one or more of the Trustees may from time to time be resident or domiciled elsewhere than in England.

This agreement has been entered into as a deed on the date stated at the beginning of it.

SIGNED and DELIVERED for and on behalf of and as a deed of
**TRITON FINANCIAL LIMITED**
by its lawfully appointed attorney

in the presence of:

Signature of Witness: *Kathryn Schueller*

Name of Witness: Kathryn Schueller

Address of Witness: 4916 W. 139th St
Hawthorne, CA. 90250

Occupation of Witness: Executive Assistant

SIGNED AND DELIVERED as a Deed by **HUGH S. WILSON** in the presence of

*Terry W. Tyler*

**HUGH S. WILSON** ………………………………

In the presence of    ……… Terry W Tyler ……

Name:    ……… Terry W Tyler ……

Address:    ……… 4a Emotion Circle #4866 ……
Santa Rosa Beach, FL 32459 USA

Position:    ……… Retired Physician ……

*[Signature Page – Trust Instrument]*

SIGNED AND DELIVERED as a Deed by **GEORGE A. VANDEMAN** in the presence of

_____

**GEORGE A. VANDEMAN**

In the presence of

Name:            Kathryn Schueller

Address:         4916 W. 139th Street
                 Hawthorne, CA 90250

Position:        Executive Assistant

## SCHEDULE 1

## ADMINISTRATIVE POWERS

Subject to the limitations set forth herein, the Trustees powers shall include, but shall not be limited to:

1.1     the power to receive notice of, attend and vote at any general meeting of the ordinary shareholders of the Company, including all or any adjournment of such meetings;

1.2     the power to sign any resolution as the registered holder of the Shares;

1.3     the power to complete and return proxy cards, consents to short notice and any other documents required to be signed by the registered holder of the Shares;

1.4     the power to otherwise execute, deliver and do all deeds, instruments and acts insofar as may be done in the Trustees' capacity as the registered holder of the Shares in exercising its powers as Trustees under the Trust;

1.5     to power to insure the Trust Assets (to the extent appropriate);

1.6     the power to procure that each of the Trustees obtains professional indemnity insurance for so long as they are a Trustee of the Trust together with any run-off cover deemed prudent by the relevant Trustee in respect of such professional indemnity insurance;

1.7     the power to perform the obligations of the Trustees under the Trust Note;

1.8     the power to perform the obligations of the Trustees under this Instrument;

1.9     the power to open a bank account or bank accounts for and on behalf of the Trust and carry on normal banking processes;

1.10    the power to file any tax returns the Trustees may determine in their absolute discretion are required and pay (or refrain from paying) Taxes and estimated income taxes on any reasonable basis the Trustees may determine in their absolute discretion without any liability whatsoever for overpayment, underpayment or non-payment of such Taxes or for any loss, interest or penalty because of such overpayment, underpayment or non-payment;

1.11    the power to collect, compromise, release or otherwise settle claims; to institute suits (at law or in equity); to collect any property or interest of the Trust Assets; to be reimbursed for expenses of litigation; and to be indemnified out of the Trust Assets for all such expenses prior to instituting any such legal action;

1.12    the power to accept the payment or transfer of further assets to the Trustees to hold on the terms of the Trust whether from the Settlor or a third party, where the Trustees believe that this is necessary or beneficial for the operation of the Trust; and

1.13    the power to amend this Instrument (i) to comply with any relevant court order; or (ii) to cure ambiguities or correct minor errors that are not inconsistent with the other provisions of this Instrument.

1

## SCHEDULE 2

## TRUSTEE REMUNERATION

1.1    The Original Trustee shall be paid the sum of EUR 20,000 (plus VAT, if applicable) per month (the "*Fees*"), for as long as it remains a Trustee. The Fees shall be paid out of the Trust Assets.

1.2    The Fees shall be paid into a bank account nominated in writing by the Original Trustee in arrears on the date falling three, six, nine or twelve months following the date of this Instrument (or on the Business Day next following such date to the extent that such date is not a Business Day) and on the same dates in every subsequent year.

1.3    Any other Trustee shall have his or its remuneration determined by the Settlor at the time of appointment of such Trustee and the terms of such remuneration shall be recorded in the relevant deed of accession to this Instrument.

1.4    Any Trustee shall be deemed to be an independent contractor and nothing in this Instrument shall give rise to an employment relationship between the Trustee (or its director or officers) and any other entity. No Trustee shall be required to perform his or its duties in Ireland or any other locale.

.