## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

GREG E. LINDBERG,

                Plaintiff,

    v.

HUGH STEVEN WILSON and
TA ASSOCIATES, L.P.,

                Defendants.

Civil Action No. 1:25-cv-00133-DAE

## MOTION TO DISMISS COMPLAINT PURSUANT TO
## FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(2), AND 12(B)(6)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

BACKGROUND .....................................................................................................3

I.      Lindberg Is Convicted of Money Laundering and Wire Fraud and Forfeits His
        Ownership Interests in Triton ..........................................................................3

II.     Triton Contributes Its Ownership Interest in Clanwilliam to a Trust and Specifically
        Precludes Lindberg from Ever Becoming a Beneficiary ......................................5

III.    Lindberg's Complaint Seeks To Enjoin the Transfer of Trust Assets That Lindberg
        Does Not and Cannot Own ..............................................................................7

ARGUMENT .........................................................................................................7

I.      THE COURT SHOULD DISMISS ALL CLAIMS FOR LACK OF SUBJECT-
        MATTER JURISDICTION PURSUANT TO RULE 12(B)(1) .........................................8

        A.      Lindberg Lacks Article III Standing To Sue Over Assets He Does Not
                Own.................................................................................................9

        B.      There Is Not Complete Diversity of Parties........................................... 12

II.     THE COURT SHOULD DISMISS ALL CLAIMS AGAINST BOTH
        DEFENDANTS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO
        RULE 12(B)(2) ........................................................................................... 14

        A.      The Court Lacks Personal Jurisdiction Over Wilson............................... 15

        B.      The Court Lacks Personal Jurisdiction Over TA Associates.................... 18

III.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST BOTH
        DEFENDANTS PURSUANT TO FEDERAL RULE 12(B)(6) ..................................... 19

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019) ................................. 20

*Alexander v. Greenwood Hall, Inc.*, 2019 WL 12336300 (S.D. Tex. Aug. 14, 2019) ................ 16

*Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401 (Tex. App. 2001) ............................................ 20

*Ashford v. Aeroframe Servs.*, L.L.C., 96 F.4th 783 (5th Cir. 2024) ............................................ 12

*AssetWorks USA, Inc. v. Battelle Mem'l Inst.*, 2023 WL 7106878 (W.D. Tex. Oct. 23, 2023) ....................................................................................................................................... 18

*Black Elk Energy Offshore Operations, LLC, In re*, 2020 WL 4940806 (Bankr. S.D. Tex. Aug. 21, 2020) ....................................................................................................................... 10

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190 (5th Cir. 2019) ............................................... 15

*FEMA Trailer Formaldehyde Prods. Liab. Litig. (Mississippi Plaintiffs), In re*, 668 F.3d 281 (5th Cir. 2012) ......................................................................................................................... 8

*Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777 (5th Cir. 2015) .............................. 10

*Fernandez v. Jagger*, 2024 WL 3717264 (5th Cir. Aug. 8, 2024) .............................................. 19

*Flores v. Pompeo*, 936 F.3d 273 (5th Cir. 2019) ......................................................................... 3

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .................................... 9

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) ......................................... 15

*Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331 (5th Cir. 2020) ............................................ 18

*Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254 (5th Cir. 1988) ......................................... 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ............................ 14, 15

*Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077 (5th Cir. 2008) .............................................. 13

*Irwin v. Veterans Admin.*, 874 F.2d 1092 (5th Cir. 1989), *aff'd sub nom. Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990) ...................................................................................... 3

*John L. Wortham & Son, L.P. v. BOK Fin. Mgmt.*, 2024 WL 2933187 (5th Cir. June 11, 2024) ............................................................................................................................... 13, 14

*Kahn v. Ripley*, 772 F. App'x 141 (5th Cir. 2019)......................................................... 10

*Locke v. Tex. Bd. of L. Examiners*, 2022 WL 875022 (E.D. Tex. Mar. 23, 2022) ....................... 7

*Long v. Dearborn Nat'l Life Ins. Co.*, 2022 WL 797417 (5th Cir. Mar. 15, 2022) ...................... 20

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023). .................................................... 18

*Martin v. City of Las Vegas, City Hall*, 2024 WL 5078142 (W.D. Tex. Dec. 10, 2024) ............ 14

*Martinez v. Sprouts Farmers Martket, LLC*, 2021 WL 4034063 (S.D. Tex. Sept. 3, 2021) .......... 9

*McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) ........................................................ 17

*MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310 (5th Cir. 2019)....................... 12

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429 (5th Cir. 2014) ................................. 16

*Morris v. Kansas City Ry.*, 2024 WL 3347379 (E.D. Tex. July 8, 2024)................................... 18

*Nail v. Thompson*, 806 S.W.2d 599 (Tex. App. 1991) .................................................. 19

*Norris v. Causey*, 869 F.3d 360 (5th Cir. 2017) ............................................................ 9

*Pace v. Cirrus Design Corp.*, 93 F.4th 879 (5th Cir. 2024) ........................................... 18

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) ............... 14

*Pelletier v. Victoria Air Conditioning, Ltd.*, 780 F. App'x 136, 140 (5th Cir. 2019)......... 9, 10, 11

*Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338 (5th Cir. 2002) .................................... 3

*RapidDeploy, Inc. v. RapidSOS, Inc.*, 2022 WL 3045649 (W.D. Tex. Aug. 1, 2022),
    *report and recommendation adopted*, 2022 WL 17814234 (W.D. Tex. Aug. 26, 2022)....... 15

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001)................................................ 11

*Repairify, Inc. v. Opus IVS, Inc.*, 2024 WL 2205663 (Tex. App. May 16, 2024) ...................... 18

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) .................................................. 7

*Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96 (5th Cir. 2018)............................ 15

*Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530 (5th Cir. 2017) ............... 13

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364 (5th Cir. 2024)................................ 14

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008)......................................... 9

*Texas v. Florida*, 306 U.S. 398 (1939) ................................................................................. 12

*United States v. $38,570 U.S. Currency*, 950 F.2d 1108 (5th Cir. 1992) ..................................... 10

*United States v. One 18th Century Colombian Monstrance*, 802 F.2d 837 (5th Cir. 1986).......... 9

*United States v. Lindberg*, 39 F.4th 151 (4th Cir. 2022) ........................................................... 4

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019) ................................... 11, 20

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .......................................................................... 9

*Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234 (5th Cir. 1988).......................................... 12

## STATUTES AND RULES

U.S. Const., art. III.................................................................................. 1, 2, 8, 9, 11, 12, 20

28 U.S.C. § 1332.................................................................................... 2, 8, 12, 14, 20

Tex. Bus. Org. Code § 9.251 ............................................................................... 16

Federal Rules of Civil Procedure:

     Rule 12(b)(1)........................................................................................... 1, 8

     Rule 12(b)(2)............................................................................... 1, 3, 13, 14, 20

     Rule 12(b)(6)................................................................................... 1, 3, 19

## INTRODUCTION

This lawsuit concerns assets that plaintiff Greg Lindberg does not own, legally cannot own, and does not have standing to sue over.  Because Lindberg lacks constitutional standing, this Court lacks subject-matter jurisdiction over his claims under Article III.  The Court also lacks statutory subject-matter jurisdiction because Lindberg's Complaint raises no federal question and joins together non-diverse parties.  And the Court lacks personal jurisdiction over the Colorado- and Massachusetts-based defendants.  For all these reasons, Lindberg's claims should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil 12(b)(1), or, alternatively, for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Lindberg's claims are also substantively meritless, so if the Court is inclined to reach the merits of these claims (it should not), it should dismiss them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

I.    The Court lacks subject-matter jurisdiction over Lindberg's claims for two independent reasons:

*First*, because Lindberg does not (and legally cannot) have any ownership interest in the assets he is suing over, he has not suffered any "injury in fact" and lacks standing under Article III of the Constitution.  The Complaint alleges that Defendant Hugh Steven Wilson has mismanaged the assets of a trust for which Wilson serves as trustee and seeks to enjoin the sale of those trust assets to Defendant TA Associates.  But Lindberg has no ownership interest in the trust or its assets:  He is not a settlor, trustee, or beneficiary of the trust.  In fact, the trust instrument (attached to the Complaint) expressly makes clear that Lindberg *cannot* become a trustee or beneficiary:  It provides that Lindberg "shall not . . . be the ultimate beneficial owner of" the trust assets, that the "beneficiar[ies]" of the trust "shall not include [Lindberg] or [Lindberg's] affiliates," and that Lindberg "shall [not] be entitled in any way to compel, control

1

or force the exercise" of the trustee's powers.  Lindberg's only relationship to the trust assets is that he was *formerly* a director and shareholder of the settlor that contributed assets to the trust, Triton Financial Ltd.  But Lindberg lost his directorship and ownership stake in Triton after he was convicted of numerous financial crimes and forfeited his assets to a special master appointed by the court to liquidate the assets and pay restitution to Lindberg's victims.  Because Lindberg has no ownership or other interest in the assets of the trust – and indeed no ownership interest in any *party* to the trust – he lacks standing to sue over those assets, and his claims do not present any "case" or "controversy" under Article III as required for subject-matter jurisdiction.

*Second*, setting aside Lindberg's constitutional standing problem, the Complaint does not adequately allege any statutory basis for federal jurisdiction over Lindberg's claims.  The Complaint relies on diversity jurisdiction under 28 U.S.C. § 1332, but the Complaint fails to allege the citizenships of Lindberg and of one of the defendants, and the undisputed facts show that Lindberg and one of the Defendants both live in Florida, indicating that the parties are *not* diverse.  Because there is not complete diversity among the parties, this Court lacks statutory subject-matter jurisdiction over Lindberg's claims.

**II.**    The Court also lacks personal jurisdiction over both Defendants.  Wilson is a resident of Colorado, and TA Associates is headquartered in Massachusetts.  The Complaint does not (and cannot) allege that either is effectively "at home" in Texas, as required for general personal jurisdiction.  It also does not assert any connection between this forum and the conduct alleged in the Complaint, as required for specific jurisdiction.  The Complaint alleges a few minor contacts between Defendants and Texas – for example, it alleges that Wilson manages *other* trusts that own shares of companies with a presence in Texas – but fails to connect those minor Texas contacts with any of the Complaint's factual allegations.  The Complaint therefore falls far short of establishing either general or specific personal jurisdiction.

**III.**    If the Court reaches the merits of Lindberg's Complaint (it should not), it should dismiss the Complaint for failure to state a claim under Rule 12(b)(6).  The Complaint alleges that Wilson violated his fiduciary duties as trustee to Lindberg, but the document attached to the Complaint (and incorporated therein by reference) demonstrates as a matter of law that Lindberg is not a beneficiary of the trust, so Wilson owes him no duty as trustee.  Lindberg's other claims (tortious interference and conspiracy) are derivative of his fiduciary-duty claims and fail because the Complaint identifies no underlying wrongful act that could support either claim.

## BACKGROUND

**I.    Lindberg Is Convicted of Money Laundering and Wire Fraud and Forfeits His Ownership Interests in Triton**

Lindberg is a former business executive and convicted fraudster currently awaiting sentencing for his role in a $2 billion fraud and money laundering scheme.  *See* Declaration of Thomas G. Schultz ("Schultz Decl.") Ex. 1.[1]  Prior to his indictment and conviction, Lindberg was a shareholder and director of Triton Financial Ltd. ("Triton"), a financial services company based in Ireland.  *See* Compl. ¶ 27; Schultz Decl. Ex. 2.  Triton itself was the sole owner of Clanwilliam Headquarters Ltd. ("Clanwilliam").  *See* Compl. Ex. A, Recitals (describing Triton as the "legal and beneficial owner of the entire issued share capital of [Clanwilliam]"), Doc. 1-3.

---

[1] "In considering a challenge to subject matter jurisdiction, the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'"  *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019).  The Court may consider "affidavits, testimony, or other evidentiary materials" attached to this motion in making that determination.  *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989), *aff'd sub nom. Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990).  Similarly, in ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the district court may consider the contents of the record before the court at the time of the motion, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343-44 (5th Cir. 2002).

In January 2018, federal authorities began investigating Lindberg after he tried to bribe insurance regulators in North Carolina.  *See United States v. Lindberg*, 39 F.4th 151, 156 (4th Cir. 2022) (setting out procedural history of Lindberg prosecution).  A grand jury indicted Lindberg in March 2019 and a jury convicted him in March 2020.  *United States v. Lindberg*, Case No. 5:19-cr-00022- MOC-DSC (W.D.N.C. filed Mar. 18, 2019 & Mar. 5, 2020), Docs. 3, 193 (attached as Schultz Decl. Exs. 3 & 4).  During the course of the government's investigation, in September 2018, Lindberg was removed as a director of Triton.  Schultz Decl. Ex. 5.[2]

Lindberg was indicted a second time in February 2023 for wire fraud, money laundering, conspiracy, and related crimes.  *See United States v. Lindberg*, Case No. 3-23-cr-48-MOC-DCK (W.D.N.C. filed Feb. 23, 2023), Doc. 1 (Indictment) (attached as Schultz Decl. Ex. 7).  The indictment alleged that Lindberg had defrauded several insurance companies out of more than $1.1 billion.  *Id.* ¶ 185.  This time, Lindberg pled guilty and agreed to provide restitution to his victims through the appointment of a special master who would liquidate and distribute Lindberg's assets.  *See United States v. Lindberg*, Case No. 3-23-cr-48-MOC-DCK (W.D.N.C. filed Dec. 5, 2024), Doc. 54, ¶ 2 (Lindberg agreeing "to pay full restitution and to the appointment of a special master 'to identify, receive, apportion, and distribute funds for restitution, and perform any other related tasks as ordered by the Court.'") (attached as Schultz Decl. Ex. 8).

In January 2025, the court presiding over Lindberg's criminal case ordered Lindberg to pay restitution to his victims, appointed a special master to oversee the liquidation and

---

[2] After Lindberg appealed his conviction, the Fourth Circuit ordered a new trial, *see Lindberg*, 39 F.4th at 156, but a second jury convicted Lindberg in May 2024.  *See United States v. Lindberg et al.*, Case No. 5:19-cr-00022- MOC-DCK (W.D.N.C. filed May 16, 2024), Doc. 435 (attached as Schultz Decl. Ex. 6).

distribution of Lindberg's assets, and ordered Lindberg to turn over his assets to the "exclusive possession and control of the Special Master." *United States v. Lindberg*, Case No. 3-23-cr-48-MOC -DCK (W.D.N.C. filed Jan. 23, 2025), Doc. 56 p.7, ¶ 4 (restitution order) (attached as Schultz Decl. Ex. 9). The restitution order applied to all interests that Lindberg owned in both Clanwilliam and Triton.[3] On February 13, 2025, in accordance with the court's order, Lindberg executed an assignment agreement transferring "all of [his] right, title, and interest" in Clanwilliam and Triton to the special master. Schultz Decl. Ex. 11 at 2 (assignment agreement).[4] Accordingly, as of February 13, 2025, Lindberg no longer had any ownership interest in Triton.

## II. Triton Contributes Its Ownership Interest in Clanwilliam to a Trust and Specifically Precludes Lindberg from Ever Becoming a Beneficiary

In November 2020, Triton, as the sole owner of Clanwilliam, transferred all its interest in Clanwilliam to an irrevocable trust (the "Clanwilliam Trust"). *See* Compl. Ex. A. The instrument memorializing the Clanwilliam Trust is attached to Mr. Lindberg's Complaint as Exhibit A (the "Trust Instrument"). Triton appointed Hugh Steven Wilson as trustee and named

---

[3] More specifically, the restitution order adopts a plan of distribution set forth in a Memorandum of Understanding submitted to the court by Lindberg and representatives of the victims of his frauds. *See United States v. Lindberg*, Case No. 3-23-cr-48-MOC-DCK (W.D.N.C. filed Dec. 20, 2024), Doc. 55-1 (Memorandum of Understanding) (attached as Schultz Decl. Ex. 10). The Memorandum of Understanding provides that Lindberg will transfer all his interests in an identified list of "Specified Affiliated Companies" to a newly formed holding company ("NHC") and then transfer his interests in NHC to the special master. *Id.* Art. II § 1; *see also* Schultz Decl. Ex. 9 p.4, ¶ 9 (restitution order applicable to "Specified Affiliated Companies"). The Specified Affiliated Companies include both Clanwilliam and Triton. Schultz Decl. Ex. 10 (Memorandum of Understanding), Ex. A.

[4] The assignment agreement transfers all of Lindberg's ownership interest in NHC Holdings LCC to the special master. *Id.* at 1-2. As set forth in the Memorandum of Understanding, NHC Holdings LLC is a holding company created to hold all of Lindberg's interests in a list of "Specified Affiliated Companies" that includes both Clanwilliam and Triton. Schultz Decl. Ex. 10, Art. II, § 1; *see also id.* Ex. A (listing Specified Affiliated Companies).

George Vandeman as the sole beneficiary.  In October 2023, Triton replaced Vandeman as the

sole beneficiary with Robert Gaddy, *see* Schultz Decl. Ex. 12, and later replaced Gaddy as

beneficiary with Mathew Manning.  Therefore, there are only three parties to the trust

instrument:  Triton (the settlor), Wilson (the trustee), and Manning (the sole beneficiary).

Lindberg is not and has never been a party to the Trust Instrument.

      Moreover, the Trust Instrument makes clear that Lindberg – referring to him by his

initials, "GL" – does not presently possess, and cannot obtain in the future, any ownership

interest in any assets of the Clanwilliam Trust.  The recitals to the Trust Instrument state that the

trust's purpose is to ensure that Lindberg "shall not . . . be the ultimate beneficial owner of, the

Clanwilliam Group."  Compl. Ex. A at 3 (Recitals).  The Trust Instrument further explains that

"the Trustees are and will be independent of GL and shall not include a Restricted Person

[defined to include Lindberg] and the Beneficiaries shall not include GL or any GL Affiliate."

*Id.*  The Trust Instrument includes numerous provisions intended to ensure that Lindberg cannot

become a beneficiary or trustee or otherwise obtain any ownership or control over the trust

assets:

- Section 1.1. of the Trust Instrument provides that a "beneficiary" of the trust "shall not include GL or any GL Affiliate."

- Section 6.1 of the Trust Instrument includes a warranty from the trustee that he "is capable of and shall at all times perform its duties as Trustee independent of, and without any influence from, GL."

- Section 4.2 of the Trust Instrument requires the trustee to "use all powers available to [him] pursuant to this Instrument to procure that no part of the Trust Assets (including the Shares and any other Trust Assets from time to time) shall be transferred directly or indirectly to a Restricted Person," and defines "Restricted Person" (at Section 1.1) to include "GL, any GL Affiliate and any other person who has personal, contractual, business, familial or other relationship with GL."

- Section 5.1 of the Trust Instrument prohibits the trustee from "caus[ing] any part of the Trust Assets to become applicable for the benefit of a Restricted Person," including Lindberg.

- Section 12.2 of the Trust Instrument provides that "no Restricted Person shall be entitled in any way to compel, control or force the exercise in any particular manner of any voting or other rights which may from time to time be exercisable by the Trustees."

*See* Compl. Ex. A.  Accordingly, Lindberg does not (and cannot) have any ownership interest in the shares of Clanwilliam that Triton contributed to the Clanwilliam Trust, and Wilson does not (and cannot) owe Lindberg any duty as trustee of the Clanwilliam Trust.

## III.    Lindberg's Complaint Seeks To Enjoin the Transfer of Trust Assets That Lindberg Does Not and Cannot Own

In 2024, Wilson, as trustee of the Clanwilliam Trust, began negotiations with TA Associates over the sale of the trust's shares in Clanwilliam.  Compl. ¶ 36.  In January 2025, Lindberg brought this suit seeking to enjoin the sale, remove Wilson as trustee, compel an accounting of the trust, and recover damages for the alleged mismanagement of the Clanwilliam Trust's assets.  Lindberg's Complaint alleges (falsely) that Lindberg is the "sole ultimate beneficial owner of Triton," *id.* ¶ 27, that he "established" and "funded" the Clanwilliam Trust, *id.* ¶¶ 15-17, and that he "holds a veto right on the sale of any assets by the Clanwilliam Trust," *id.* ¶ 36.  Lindberg's Complaint attaches the Trust Instrument, which directly refutes these allegations and makes clear that Lindberg does not and cannot own any interest in the assets of the Clanwilliam Trust.  *See* Compl. Ex. A.

## ARGUMENT

The Court should dismiss the Complaint for lack of subject-matter jurisdiction or, alternatively, for lack of personal jurisdiction.  "When a court's jurisdiction is challenged on multiple grounds, the court may dispose of the case on any of the asserted grounds." *Locke v. Tex. Bd. of L. Examiners*, 2022 WL 875022, at *1 (E.D. Tex. Mar. 23, 2022) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999)).

7

I.    **THE COURT SHOULD DISMISS ALL CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION PURSUANT TO RULE 12(B)(1)**

The Court should dismiss Lindberg's claims for lack of subject-matter jurisdiction under Rule 12(b)(1) for two independent reasons: *First*, Lindberg has no ownership interest in the assets that are the subject of his Complaint and has not suffered any "injury in fact" arising from their alleged mismanagement, as required for jurisdiction under Article III's "case" or "controversy" requirement. *Second*, Lindberg's Complaint fails to allege complete diversity among the parties, as required for statutory federal jurisdiction under 28 U.S.C. § 1332.

"Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal citation omitted). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* Here, the Court may dismiss the Complaint for lack of subject-matter jurisdiction based on "the complaint alone," because the Trust Instrument attached as Exhibit A to the Complaint makes clear that Lindberg lacks standing and the Complaint fails to allege diversity jurisdiction. The Court may also dismiss the Complaint for lack of subject-matter jurisdiction based on other "undisputed facts evidenced in the record," which underscore Lindberg's lack of standing and establish that one of the Defendants is a citizen of the state in which Lindberg resides (Florida), defeating diversity jurisdiction.

### A.    Lindberg Lacks Article III Standing To Sue Over Assets He Does Not Own

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'" *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008). "That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Id.* Accordingly, "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990).

"Standing of the constitutional variety – the well-known injury, causation, and redressability trifecta – is a question of subject matter jurisdiction." *Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017). Therefore, "[a] court lacks power to decide a claim when a plaintiff lacks standing to bring the claim." *Martinez v. Sprouts Farmers Martket, LLC*, 2021 WL 4034063, at *1 (S.D. Tex. Sept. 3, 2021).

"To establish standing [under Article III] . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "To prevail on a factual dispute concerning standing, a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Pelletier v. Victoria Air Conditioning, Ltd.*, 780 F. App'x 136, 140 (5th Cir. 2019).

1.    Lindberg lacks Article III standing because he does not have any ownership interest in the trust assets at issue and therefore cannot suffer any "injury in fact" from the transfer of those assets. "[T]o establish standing, [a plaintiff] must show at least a facially colorable claim to an ownership interest in the [property at issue]." *United States v. One 18th*

*Century Colombian Monstrance*, 802 F.2d 837, 838 (5th Cir. 1986) (dismissing claim for lack of standing where plaintiff "has been unable to establish a facially colorable ownership interest of either a legal or equitable nature"); *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019) (per curiam) (where plaintiff "did not have any legal interest in [assets at issue], he could not show that he suffered any economic injury"); *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1112 (5th Cir. 1992) ("[A] bare assertion of ownership of the [property], without more, is inadequate to prove an ownership interest sufficient to establish standing.") (collecting authority); *Pelletier*, 780 F. App'x at 137, 140 (affirming dismissal of complaint where plaintiff was not the "proper legal owner" of the asset at issue); *cf. Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 782 (5th Cir. 2015) (explaining that "borrowers . . . ha[ve] no standing under Texas law to enforce a [trust agreement] because they were neither parties to the [agreement] nor intended third-party beneficiaries under it").

The Trust Instrument attached to Lindberg's Complaint makes clear that Lindberg does not (and legally cannot) own any interest in the assets of the Clanwilliam Trust. Lindberg is not a party to the Trust Instrument: He is not a settlor, nor a trustee, nor a beneficiary. Instead, the Trust Instrument expressly *prohibits* Lindberg and his affiliates from ever obtaining any interest in the trust assets. Accordingly, Lindberg lacks standing to complain about the management of trust assets. *See In re Black Elk Energy Offshore Operations, LLC*, 2020 WL 4940806, at *4 (Bankr. S.D. Tex. Aug. 21, 2020) (parties lacked standing to complain about administration of trust where they were "not beneficiaries of the Trusts and do not have an interest in the administration of the Trusts").

The Fifth Circuit's recent decision in *Pelletier* is instructive. There, a *pro se* plaintiff "allege[d] that he [was] the owner of a hotel that was being constructed in Texas" and "raise[d]

breach of contract and other state law claims for allegedly faulty plumbing installed in that hotel by the [defendants]." 780 F. App'x at 137. The Fifth Circuit affirmed the district court's dismissal of the complaint for lack of subject matter jurisdiction because "documentary and testimonial evidence indicat[ed] that an LLC was instead the proper legal owner of the hotel," meaning that the plaintiff lacked standing to sue over the allegedly faulty plumbing. *Id.* at 140.

The same result is appropriate here, except that this Court need not consider any "documentary [or] testimonial evidence" to dismiss on standing grounds, because the Trust Instrument attached to the Complaint establishes by itself that Lindberg lacks any ownership interest in the trust assets. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("documents attached to the complaint" are properly considered part of the complaint). The Court may therefore dismiss the Complaint for lack of subject-matter jurisdiction based on "the complaint alone" without considering any other evidence. *Ramming*, 281 F.3d at 161.

**2.** While the Court can dismiss for lack of standing based entirely on the unambiguous terms of the Trust Instrument attached to the Complaint, additional undisputed facts bolster the conclusion that Lindberg lacks standing: Not only does Lindberg lack any ownership interest in the assets of the Clanwilliam Trust that he is suing over; he also lacks any ownership interest in the company that contributed the assets to that trust, Triton. Lindberg is a *former* shareholder and director of Triton, but he was removed as a director after he was convicted of myriad financial crimes, and he forfeited his ownership interest in Triton as part of a plea bargain in which Lindberg agreed to pay restitution to his victims. *See supra* pp. 5-7. Accordingly, Lindberg does not have an ownership interest in either the assets of the Clanwilliam Trust or in the party that formerly owned those assets, Triton. Because Lindberg

11

does not have Article III standing to sue over assets he does not and cannot own, the Court should dismiss Lindberg's claims for lack of subject matter jurisdiction.

**B.**     **There Is Not Complete Diversity of Parties**

Independent of the Court's lack of jurisdiction under Article III, this Court lacks statutory jurisdiction over Lindberg's claims under 28 U.S.C. § 1332 because the Complaint does not (and cannot) allege complete diversity among the parties.  The Complaint does not allege the citizenship of Lindberg or one of the Defendants (TA Associates), and the undisputed facts show that Lindberg and a limited partner of TA Associates are both residents of Florida.

Lindberg asserts that this Court has diversity jurisdiction under 28 U.S.C. § 1332, which "requires 'an actual, substantial controversy between citizens of different states.'"  *Ashford v. Aeroframe Servs.*, L.L.C., 96 F.4th 783, 794-95 (5th Cir. 2024) (quoting *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988)); *see* Compl. ¶ 7.  "To properly allege diversity jurisdiction under § 1332, the parties need to allege 'complete diversity.'  That means all persons on one side of the controversy [must] be citizens of different states than all persons on the other side."  *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019).  "Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings."  *Id.* (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)).

1.     The Complaint's jurisdictional allegations are insufficient to establish diversity jurisdiction for two independent reasons:

*First*, the Complaint fails to allege Lindberg's citizenship.  The Complaint alleges that Lindberg is a "resident of the State of Florida," Compl. ¶ 8, but "an allegation of residency alone does not satisfy the requirement of an allegation of citizenship" for purposes of diversity jurisdiction.  *MidCap*, 929 F.3d at 313 (internal quotation marks omitted).  That is because

"[c]itizenship requires not only '[r]esidence in fact' but also the purpose to make the place of residence one's home." *Id.* (quoting *Texas v. Florida*, 306 U.S. 398, 424 (1939)).  Because the Complaint does not allege that Lindberg is a *citizen* of Florida – i.e., that he intends to "make th[is] place of residence [his] home" – the Complaint fails to allege diversity jurisdiction.

*Second*, the Complaint does not adequately allege the citizenship of TA Associates; in particular, it fails to allege the citizenship of TA Associates' partners.  "It is more than well-established that, for diversity jurisdiction, '[t]he citizenship of a limited partnership is based upon the citizenship of each of its partners.'"  *John L. Wortham & Son, L.P. v. BOK Fin. Mgmt.*, 2024 WL 2933187, at *2 (5th Cir. June 11, 2024) (quoting *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008)).  "Accordingly, a party seeking to establish diversity jurisdiction must specifically allege the citizenship of every member of every LLC or partnership involved in a litigation."  *Id.* (quoting *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017)).  The Complaint alleges that TA Associates "is a limited partnership organized and existing under Delaware law," but includes no allegations about the citizenship of TA Associates' partners.  For this independent reason, the Complaint fails to adequately allege diversity jurisdiction.

2.    Lindberg cannot cure these jurisdictional defects by amending the Complaint to clarify that he is a "citizen" of Florida or to add details regarding the citizenship of TA Associates' partners, because the undisputed facts show that TA Associates is also a citizen of Florida, defeating diversity jurisdiction.  As set forth in the attached declaration of TA Associates General Counsel Arthur Price, TA Associates is a limited partnership whose general partner is an LLC, and one of the members of that LLC is a citizen of Florida.  *See* Declaration of Arthur B. Price ("Price Decl.") ¶ 4.  Because "the citizenship of a LLC is determined by the

citizenship of all of its members," *Harvey*, 542 F.3d at 1080, the LLC that serves as the general partner of TA Associates is a citizen of Florida.  And because "[t]he citizenship of a limited partnership is based upon the citizenship of each of its partners," *Wortham*, 2024 WL 2933187, at *2, TA Associates itself is also a citizen of Florida.  There is accordingly not complete diversity among the parties as required for diversity jurisdiction under 28 U.S.C. § 1332.

## II.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST BOTH DEFENDANTS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(2)

Should the Court conclude that it has subject matter jurisdiction over this dispute, the Court should dismiss the Complaint as to both defendants for lack of personal jurisdiction under Rule 12(b)(2).

Lindberg, as the plaintiff, bears the burden of "present[ing] sufficient evidence to support a prima facie case supporting jurisdiction." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).  But "[t]he *prima facie* standard does not require the court to credit conclusory allegations, even if uncontroverted." *Martin v. City of Las Vegas, City Hall*, 2024 WL 5078142, at *3 (W.D. Tex. Dec. 10, 2024) (citing *Panda*, 253 F.3d at 868-69).

Personal jurisdiction may be either general or specific.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  General personal jurisdiction applies "only when a defendant is 'essentially at home,' and any and all claims may be brought against a defendant wherever it is subject to such jurisdiction." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024).  "By comparison, specific personal jurisdiction is narrower and attaches only when there is a sufficient connection between a defendant's forum-related contacts and a plaintiff's causes of action." *Id.*  The Complaint fails to plead either form of personal jurisdiction over either Defendant.

14

### A.    The Court Lacks Personal Jurisdiction Over Wilson

Lindberg does not attempt to plead that this Court has general jurisdiction over Wilson, and it does not.  The Supreme Court has made clear that an individual defendant is "at home" where he or she is domiciled, and, as the Complaint alleges, Wilson is a domiciliary of Colorado. Compl. ¶ 9; *Goodyear*, 564 U.S. at 924.

A federal court sitting in diversity has specific jurisdiction where the state's long-arm statute permits the exercise of jurisdiction and "an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution."  *RapidDeploy, Inc. v. RapidSOS, Inc.*, 2022 WL 3045649, at *3 (W.D. Tex. Aug. 1, 2022), *report and recommendation adopted*, 2022 WL 17814234 (W.D. Tex. Aug. 26, 2022). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis."  *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).  Courts apply a three-step analysis to determine whether specific jurisdiction comports with due process:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019); *see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021).  The Complaint satisfies none of those requirements.

*First*, Lindberg fails to establish that Wilson had any, let alone minimum, contacts with Texas.  Indeed, none of the 122 paragraphs of the Complaint alleges that Wilson ever traveled to Texas, contacted anyone in Texas, caused harm in Texas, or engaged in any tortious act in Texas. For example, the Complaint alleges that co-defendant TA Associates, L.P., has a Texas office,

but it does not allege that Wilson had any communication with anyone in that office.[5]  Instead,
the Complaint makes the barebones allegation that "the allegations complained of in this petition
occurred while [Wilson] was performing his duties as Trustee in Texas," Compl. ¶ 9, without any
further description of what specific actions he took in Texas.  That is exactly the kind of
conclusory allegation that courts do not credit.  *Alexander v. Greenwood Hall, Inc.*, 2019 WL
12336300, at *7 (S.D. Tex. Aug. 14, 2019) (rejecting conclusory allegation that defendant
conducted business in Texas).  At any rate, Wilson has signed a declaration stating that he has
"never taken any action with respect to the Clanwilliam Group Trust in Texas."  Wilson Decl.
¶ 10; *see also id.* ¶¶ 8, 11.

The Complaint also alleges that Wilson served as trustee for trusts that owned two
companies with a presence in Texas – one such company is allegedly headquartered in Plano,
Texas, and the other allegedly has an office in El Paso, Texas, and is authorized to do business in
Texas.  Compl. ¶ 9.  But those allegations are not sufficient to establish *Wilson's* own minimum
contacts with Texas – *i.e.*, that he has purposefully directed his activities towards Texas or
availed himself of the "privileges of conducting business in Texas."  *See, e.g.*, *Monkton Ins.
Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).  Being a trustee of a trust owning assets
located in Texas, standing alone, is not sufficient to establish that one availed themselves of the
privilege of conducting business in Texas.  *Cf. Alexander*, 2019 WL 12336300, at *7 (declining
to exercise jurisdiction over individual employee where employer was registered to do business
and had an office in Texas); Tex. Bus. Org. Code § 9.251(10), (15), (16) (conducting an isolated

---

[5] The Complaint alleges that Wilson engaged in "self-dealing and willful devaluation" of
assets in the Clanwilliam Trust, purportedly through an attempted sale of the Clanwilliam Group
to TA Associates, **LLP**, at an allegedly below market price.  *See* Compl. ¶ 36.  But while the
Complaint alleges that a different entity, co-defendant TA Associates, **L.P.**, has offices in Texas,
Compl. ¶ 10, it does not allege any connection between that entity and TA Associates, LLP.

transaction, owning personal property in Texas, and "acting as a governing person of a domestic

. . . entity that is registered to transact business in this state" are among acts that do not constitute

the transaction of business in Texas).

The Complaint's only other allegation that mentions Texas is that Wilson supposedly

"made a side deal with M3 Partners where he agreed to resign from the trust that owns Beckett

Collectibles (which is headquartered in Plano, TX)."  Compl. ¶ 109.  That allegation does not

establish that Wilson "directed his activities" toward Texas.  For example, the Complaint does

not allege that, beyond making this supposed deal, Wilson ever actually resigned from the trust

at issue, that he made this alleged "side deal" in Texas, that that resignation would have impacted

or harmed the underlying asset, Beckett Collectibles, at all, let alone in Texas, or that the trust

itself was formed in Texas or had any other connection to Texas beyond owning one company

that happens to be headquartered in Texas.  *See McFadin v. Gerber*, 587 F.3d 753, 759-60 (5th

Cir. 2009) (personal jurisdiction cannot rest on "'random,' fortuitous,' or 'attenuated' contacts,

or of the 'unilateral activity of another party or third person.'").

*Second*, even if Wilson had minimum contacts with Texas, the Complaint's claims do not

arise out of or result from those contacts.  The Complaint concerns Wilson's conduct as trustee

of the Clanwilliam Trust.  Compl. ¶¶ 35-42.  But the Complaint does not allege that the two

companies allegedly based in Texas – Beckett Collectibles (also allegedly involved in the M3

Partners side deal) and Home Medical Equipment Specialists – are owned by the Clanwilliam

Trust.  Indeed, the Complaint alleges that Wilson is the trustee of two other trusts called the

Beckett Group Trust and the Home Medical Equipment (HME) Specialists Trust.  *Id.* ¶ 16; *see*

*also id.* ¶ 109.  But the Complaint does not allege that Wilson breached any duties owed to those

17

trusts (aside from the conclusory phrase "All Trusts" in the subheadings for Counts 1 and 3), much less that such breach somehow gave rise to the claims in this action.

*Finally*, the exercise of personal jurisdiction over Wilson would not be fair and reasonable. He is a citizen of Colorado with no relevant connection to Texas, and it would be burdensome to force him to litigate this case in Texas. Accordingly, the claims against Wilson must be dismissed for lack of personal jurisdiction.

### B.    The Court Lacks Personal Jurisdiction Over TA Associates

The Complaint fails to establish personal jurisdiction over TA Associates as well. For purposes of general personal jurisdiction, "[a] corporation is at home where its place of incorporation and its principal place of business are located." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 898 (5th Cir. 2024) (internal citations omitted); *see Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 338 n.10 (5th Cir. 2020) (same for other types of corporate entities). The Complaint alleges only that TA Associates "has regional headquarters" in Texas and is "organized and exist[s] under Delaware law." Compl. ¶ 7. It says nothing about TA Associates' principal place of business, which is Boston, Massachusetts. *See* Price Decl. ¶ 2.[6] Indeed, TA Associates' Texas office is "is the smallest of TA Associates' offices," and "[o]nly ten of TA Associates' nearly 300 employees work out of [that] office." *Id.* ¶ 3. The Court accordingly lacks general personal jurisdiction over TA Associates.

---

[6] Further, "none of Texas's business registration statutes – and nothing in Texas's long-arm scheme – includes any language specifically directing that complying with them would subject a business to personal jurisdiction in Texas." *Repairify, Inc. v. Opus IVS, Inc.*, 2024 WL 2205663, at *1 (Tex. App. May 16, 2024); *see also Morris v. Kansas City Ry.*, 2024 WL 3347379, at *4 (E.D. Tex. July 8, 2024) (refusing to extend "*Mallory*'s conclusion of implied consent to jurisdiction . . . to the Texas long-arm statute"); *AssetWorks USA, Inc. v. Battelle Mem'l Inst.*, 2023 WL 7106878, at *2 (W.D. Tex. Oct. 23, 2023) (same); *cf Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023).

With respect to specific jurisdiction, the Complaint alleges no facts showing that Lindberg's claims "arise[] out of or result[] from" TA Associates' single Texas office, as required for specific personal jurisdiction. *Fernandez v. Jagger*, 2024 WL 3717264, at *2 (5th Cir. Aug. 8, 2024) (per curiam) (unpublished). The Complaint does not allege that TA Associates' single office in Texas had any role in the negotiations over the sale of Clanwilliam to TA Associates. Nor can it: As set forth in the attached declaration of TA Associates General Counsel Arthur Price, "TA Associates' potential transaction with the Clanwilliam Trust managed by Hugh Wilson is led by a team out of our London office, not the Austin office." Price Decl. ¶ 3. Lindberg accordingly cannot show that this Court has specific personal jurisdiction over TA Associates.

## III.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST BOTH DEFENDANTS PURSUANT TO FEDERAL RULE 12(B)(6)

If the Court is inclined to reach the merits of the Complaint (it should not), it should dismiss the Complaint for failure to state a claim under Rule 12(b)(6). The Complaint's causes of action fall into two major categories: (1) claims that Wilson violated his duties as trustee (the first, third, and fourth causes of action), and (2) derivative claims that Defendants conspired together and "tortiously interfered" with the Clanwilliam Trust's prospective business relations (the second cause of action). None is legally cognizable.[7]

The Complaint's claims that Wilson violated his duties as trustee fail as a matter of law because, among other reasons, Wilson does not owe any duty to Lindberg as a non-beneficiary. *See*, *e.g.*, *Nail v. Thompson*, 806 S.W.2d 599, 602 (Tex. App. 1991) ("Because [plaintiffs] were

---

[7] The following arguments for dismissal under Rule (12)(b)(6) are non-exhaustive. Defendants reserve the right to raise additional arguments for dismissal under Rule 12(b)(6) if Lindberg ever files a complaint alleging identical or similar claims in another jurisdiction.

not beneficiaries, then, the trustees did not owe them any duty").  Indeed, the Trust Instrument expressly requires Wilson to perform his duties "independent of, and *without* any influence from, [Lindberg]."  Compl. Ex. A. § 6.1 (emphasis added).[8]

The Complaint's derivative claims – conspiracy and tortious interference – fail because the Complaint identifies no underlying wrongful act to support either claim.  "[C]ivil conspiracy is not an independent tort," and therefore "requires an underlying tort that has caused damages." *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).  Tortious interference with prospective business relations likewise requires an "independently tortious or unlawful act by the defendant that prevented the relationship from occurring."  *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 415 (Tex. App. 2001).  The Complaint identifies no independently wrongful act by either Wilson or TA Associates.  Accordingly, the Complaint's conspiracy and tortious interference claims fail as a matter of law.

## CONCLUSION

The Court should dismiss all of Lindberg's claims for lack of Article III standing.  In the first alternative, the Court should dismiss the Complaint for lack of diversity jurisdiction under 28 U.S.C. § 1332.  In the second alternative, the Court should dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2).  In the third alternative, the Court should dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

---

[8] The Court may consider the Trust Instrument in ruling on Defendants' Rule 12(b)(6) arguments and need not accept as true allegations in the Complaint that are contradicted by the Trust Instrument.  "In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss," courts may consider "documents attached to the complaint."  *Walker*, 938 F.3d at 735. Further, the Court need not accept as true allegations that are "contradicted by facts disclosed by a document appended to the complaint."  *Long v. Dearborn Nat'l Life Ins. Co.*, 2022 WL 797417, at *4 (5th Cir. Mar. 15, 2022).

Dated:  March 10, 2025

Respectfully submitted,

/s/ John F. Bash (with permission)
John F. Bash
State Bar No. 24067504
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
Tel:  (737) 667-6100
Fax:  (737) 667-6110
johnbash@quinnemanuel.com

Eric D. Wolkoff (*pro hac vice* pending)
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel:  (617) 712-7100
Fax:  (617) 712-7200
ericwolkoff@quinnemanuel.com

*Counsel for Defendant*
*Hugh Steven Wilson*

/s/ Timothy Cleveland
Timothy Cleveland
State Bar No. 24055318
Austin H. Krist
State Bar No. 24106170
Lourdes Ortiz
State Bar No. 24134904
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
West Lake Hills, Texas 78746
Tel:  (512) 689-8698
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com
lortiz@clevelandkrist.com

Kevin B. Huff (*pro hac vice* forthcoming)
Thomas G. Schultz (*pro hac vice* forthcoming)
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.:  (202) 326-7900
Fax:  (202) 326-7999
khuff@kelloghansen.com
tschultz@kelloghansen.com

*Counsel for Defendant TA Associates, L.P.*