# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

### Civil Action No. 1:25-cv-00133-DAE

| | |
|---|---|
| **GREG E. LINDBERG** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **HUGH STEVEN WILSON and** | ) |
| **TA ASSOCIATES, L.P.** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Greg E. Lindberg respectfully submits this Opposition to Defendants
Hugh Steven Wilson and TA Associates, L.P.'s Motion to Dismiss (Doc. 9) pursuant
to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). For the reasons
set forth below, and in the Personal Affidavit of Greg Lindberg filed
contemporaneously herewith, the Court should deny Defendants' motion in its
entirety.

## INTRODUCTION & LEGAL STANDARD

Defendants' Motion to Dismiss rests on a mischaracterization of
Plaintiff's Complaint, an improper attempt to resolve factual disputes at the
pleading stage, and an overly narrow interpretation of jurisdictional and
pleading standards. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.
2001) (courts must assess jurisdiction based on the complaint's allegations, not
extrinsic factual disputes, absent a hearing); *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (pleading sufficiency judged by allegations, not merits). Also *see*
*Oppenheimer v. Prudential Securities Inc.*,

94 F.3d 189, 194 (5th Cir.1996) (the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true).

Plaintiff has adequately alleged standing under Article III, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (standing requires injury, causation, and redressability, met by plausible allegations), diversity jurisdiction under 28 U.S.C. § 1332, *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (diversity judged by complaint's facial allegations), personal jurisdiction over both Defendants, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (jurisdiction hinges on contacts, assessed via prima facie showing), and plausible claims for relief, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plausibility standard met by factual allegations raising a right to relief).

At this stage, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor. *Iqbal*, 556 U.S. at 678 (allegations taken as true on 12(b)(6)); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (same for 12(b)(2) prima facie case). Defendants' arguments to the contrary seek to prematurely litigate the merits of the case rather than test the sufficiency of the Complaint. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008) (standing disputes over legal rights are merits issues, not jurisdictional); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (merits not reached on 12(b)(6)). The Motion should be denied.

**ARGUMENT**

## I.   THE COURT HAS SUBJECT-MATTER JURISDICTION UNDER RULE 12(b)(1)

Defendants argue that the Court lacks subject-matter jurisdiction because (1) Plaintiff lacks Article III standing and (2) there is no complete diversity of parties. Both arguments fail.

### A.  Plaintiff Has Article III Standing

A plaintiff invoking federal jurisdiction under Article III bears the burden of establishing the "irreducible constitutional minimum" of standing by demonstrating (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130 (1992) Plaintiff meets all three requirements based on the allegations in the Complaint.

#### 1.  *Injury in Fact*

As relevant here, the injury-in-fact requirement requires a plaintiff to show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan, supra*, at 560, 112 S.Ct. 2130. Pp. 1547 – 1550.

Defendants assert that Plaintiff lacks standing because he has no ownership interest in the Clanwilliam Trust assets. This argument ignores Plaintiff's allegations and the procedural posture of this motion, as well as ignores the plain language of the Order Appointing Special Master (the "Order") as entered on January

23, 2025 by the Federal Court for the Western District of North Carolina (see Mot. at 186).

Plaintiff alleges he is "the sole ultimate beneficial owner of Triton Financial Limited" (Compl. ¶ 27), which established the Clanwilliam Trust (Compl. ¶ 28), and that he "funded the trusts by irrevocably transferring his (direct or indirect) interests" to them (Compl. ¶ 15). He further alleges that Defendant Wilson, as trustee, is mismanaging and attempting to sell trust assets—valued at $800 million—for a fraction of their worth ($450 million), causing damages to the Plaintiff and to the policyholders of the Plaintiff's insurance companies of over $350 million. (Compl. ¶¶ 36-38, 67-68). These allegations establish a concrete, particularized injury: the devaluation of assets Plaintiff funded and ultimately beneficially owns through Triton, over which he retains a veto right (Compl. ¶ 36). Defendants' reliance on the Trust Instrument (Compl. Ex. A) to argue Plaintiff has no interest is premature.

At the Rule 12(b)(1) stage, when a facial attack is made (as here, where Defendants primarily rely on the Complaint and its attachment), the Court must accept Plaintiff's allegations as true unless contradicted by the Complaint itself. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The Trust Instrument's recital that "GL shall not be the ultimate beneficial owner" (Compl. Ex. A at 3) does not negate Plaintiff's stated beneficial ownership through Triton or his economic injury from Wilson's actions.

By establishing the Trust, the Plaintiff exchanged his interest in Clanwilliam for a Trust Note (attached hereto as Exhibit A) which now has an accrued and unpaid balance of $791 million.  Article 4 of the Trust Note provides as follows:

a.  The Principal Amount shall bear interest payable in cash on the outstanding balance thereof at a rate per annum equal to twenty-five percent (25.00%), and shall be payable hereunder in arrears on the first business day of each fiscal quarter (i.e., on the first business day of each of January, April, July and October) (a "**Cash Interest Payment**") from assets available for payment pursuant to clause 11.1 of the Trust Instrument and the law, provided, however, to the extent any such accrued Cash Interest Payment (or any portion thereof) is not paid on the date such payment is due and payable, such unpaid amount shall be automatically, without any further action of the Original Trustee or the Settlor, compounded and added to the Principal Amount on the date that such interest is accrued (the "**PIK Interest**"). For the avoidance of doubt, the non-payment of the Cash Interest Payment on the schedule described herein shall not constitute an Event of Default (as defined below) hereunder.

b.  All interest accrued hereunder but unpaid as of the day preceding the Maturity Date (as defined in the Trust Instrument) shall be payable in cash on the Maturity Date (as defined in the Trust Instrument).

Notably, the sole asset backing the Trust Note is the Clanwilliam Group, which TA Associates is proposing to purchase for $450 million. In short, the proposed sale of Clanwilliam to TA Associates will not satisfy the Trust Note balance – materially harming the Plaintiff and the policyholders of the Plaintiff's insurance companies.

Plaintiff's stated veto right and funding role further suggest a legally protected interest sufficient for standing. Whether Plaintiff's interest is ultimately valid is a merits question, not a jurisdictional one. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008) (standing exists even if plaintiff's legal right is disputed, so long as an injury is alleged).

The Plaintiff's interest in Clanwilliam is also further described in the Order Appointing Special Master (Mot. at 186). Specifically, the Order requires the Special Master to attempt to settle the required restitution amounts owed by the Plaintiff with all or *part of* the Primary Restitution Assets. Specifically, the order provides at paragraph 6 as follows:

> 6.    In accomplishing the tasks enumerated above, the Special Master shall attempt to meet Defendant's restitution obligations using all or part of the Primary Restitution Assets.

This requirement expressly entitles Lindberg to all Primary Restitution Assets that are not otherwise used as *part of* the required payoff obligation.  If a sale of Clanwilliam to TA Associates is allowed to proceed in violation of the Order for $350 million less than Clanwilliam's market value, this harms the Plaintiff and the policyholders of the Plaintiff's insurance companies by $350 million.

An Assignment Agreement executed in connection with the Order (attached hereto as Exhibit B) further provides that Lindberg, as Assignor, shall remain the *beneficial owner* of the Primary Restitution Assets (which expressly include Clanwilliam) and shall be entitled to receive allocations of income or loss with respect to the Primary Restitution Assets. Specifically, Article 5 of the Assignment Agreement provides as follows:

> c.    Each of the Parties acknowledges and agrees that solely for federal, state and local tax purposes, Assignor shall continue to be the beneficial owner of the NHC Equity Interest as of and following the Effective Date and shall continue to receive allocations of income or loss, and corresponding tax distributions, if any, with respect to the NHC Equity Interest for so long as NHC remains a disregarded entity for federal and state income tax purposes.

The Assignment Agreement further provides that the Assigned Rights and Interests are only assigned *pending satisfaction* by Lindberg of his obligations under the Order – indicating that the remaining assets will be returned to Lindberg's full ownership and control after satisfaction of the restitution obligations. Specifically, Article 1 of the assignment agreement provides as follows:

the MOU.  Pending satisfaction by Sponsor of all of his restitution obligations under the Order and any formal restitution order to be hereafter entered by the Court (as described in the Order), Assignor shall retain no rights or interests in or to the Assigned Rights and Interests.

The injury-in-fact requirement requires a plaintiff to allege an injury that is both "concrete and particularized." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)  Selling Clanwilliam for $341 million less than the value of the Trust Note – and $350 million less than its market value – and thus depriving the Plaintiff and the policyholders of the Plaintiff's insurance companies from these funds easily meets the "concrete" requirement.

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). At a very minimum, the fact that the Plaintiff in this case *remains the beneficial owner* for the purposes of allocations of income tax liabilities is sufficient for standing under Article III.  A sale of Clanwilliam to TA Associates would require the Plaintiff to incur an additional $80 million in federal income taxes liabilities

which the BC Partners and Quadro transactions as described herein would not require – directly harming Lindberg by $80 million.

### 2. Causation

Plaintiff alleges that Wilson's self-dealing and mismanagement, including colluding with TA Associates to sell Clanwilliam at a below-market price, directly caused the $350 million injury to himself and the policyholders of his insurance companies (Compl. ¶¶ 35-42, 67-68). This satisfies the causation prong, as the injury is fairly traceable to Defendants' conduct. *See Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017).

### 3. Redressability

Plaintiff seeks injunctive relief to (a) stop the sale until an order approving any sale has been entered in WDNC Federal Court per the terms of Order, (b) replace Wilson as the trustee with the Federal Special Master, (c) compel an accounting, and (d) require the payment of $350 million in damages (Compl. Prayer). These remedies would redress Plaintiff's alleged injuries by preventing further loss and compensating for past harm. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

Defendants' factual attack—relying on extrinsic evidence like Schultz's Declaration—does not defeat standing at this stage. The Court may consider such evidence only to resolve disputed facts, *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019), but no such dispute exists here: Defendants' ongoing beneficial ownership rights are evidenced by the plain langue of the Order Appointing Special Master and

by the plain language of the Assignment Agreement related to the Plaintiff's assignment of his interests in Clanwilliam to the Special Master. Plaintiff need only allege a "facially colorable claim" to an interest, *United States v. One 18th Century Colombian Monstrance*, 802 F.2d 837, 838 (5th Cir. 1986), which he has done.

### B. Complete Diversity Exists

Defendants argue that diversity jurisdiction fails because (1) Plaintiff alleges residency, not citizenship, and (2) TA Associates has a Florida citizen partner, destroying complete diversity. These arguments are unavailing.

#### 1. Plaintiff's Citizenship

The Complaint alleges Plaintiff is a "resident of the State of Florida" (Compl. ¶ 8). While residency alone is insufficient, *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019), the Court should construe this pro se pleading liberally and infer citizenship from the residency allegation, especially where no contrary evidence exists. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se pleadings held to less stringent standards). Alternatively, Plaintiff requests leave to amend to clarify his Florida citizenship, which relates back to the filing date and cures any defect. Fed. R. Civ. P. 15(a)(2).

#### 2. TA Associates' Citizenship

Defendants admit TA Associates is a Delaware limited partnership with its principal place of business in Massachusetts (Price Decl. ¶ 2), but claim a Florida citizen partner destroys diversity (Mot. at 13-14). At the pleading stage, Plaintiff need only allege diversity based on the information available to him. The Complaint

alleges TA Associates is organized under Delaware law with offices in Texas (Compl. ¶ 10), and Plaintiff had no obligation to preemptively allege the citizenship of every partner, particularly when this information is not a matter of public record and can only be discovered via additional proceedings. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005) (plaintiff not required to negate every possible diversity-destroying fact). Defendants' extrinsic evidence (Price Decl. ¶ 4) raises a factual dispute inappropriate for resolution on a facial Rule 12(b)(1) motion. *See Ramming*, 281 F.3d at 161. If necessary, Plaintiff requests jurisdictional discovery to confirm TA Associates' partners' citizenships.

Plaintiff has alleged complete diversity—Florida (Plaintiff) versus Colorado (Wilson) and Delaware/Massachusetts (TA Associates)—and Defendants' rebuttal relies on contested facts. Jurisdiction under 28 U.S.C. § 1332 is proper.

## II. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS UNDER RULE 12(b)(2)

Defendants argue the Court lacks personal jurisdiction over Wilson (Colorado) and TA Associates (Delaware/Massachusetts). Plaintiff has made a prima facie showing of specific jurisdiction over both, which Defendants fail to rebut.

### A. Personal Jurisdiction Over Wilson

Specific jurisdiction requires (1) minimum contacts with Texas, (2) a cause of action arising from those contacts, and (3) fairness. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Plaintiff satisfies all three.

#### 1. Minimum Contacts

Plaintiff alleges Wilson "managed substantial trust assets related to Lindberg that were based in Texas (specifically the assets of Beckett Collectibles, headquartered in Plano, TX)" and that "the allegations complained of in this petition occurred while he was performing his duties as Trustee in Texas" (Compl. ¶ 9). Additionally, Wilson allegedly made a "side deal" with M3 Partners involving the trust owning Beckett Collectibles, a Texas-headquartered company, to facilitate the Clanwilliam sale (Compl. ¶ 109). These allegations show Wilson purposefully directed activities toward Texas by managing Texas-based assets and negotiating deals affecting them.

### 2.    *Arising From Contacts*

Plaintiff's claims—breach of fiduciary duty, conspiracy, and tortious interference—arise from Wilson's alleged mismanagement of trust assets, including those in Texas, and his efforts to sell Clanwilliam at a loss, partly through Texas-related dealings (e.g., the M3 side deal) (Compl. ¶¶ 35-42, 109). The Texas contacts are sufficiently connected to the Clanwilliam transaction, as Wilson's control over multiple trusts (including Texas-based ones) allegedly enabled his self-dealing scheme.

### 3.    *Fairness*

Exercising jurisdiction is fair. Wilson's alleged Texas contacts were purposeful, Texas has an interest in regulating trust mismanagement affecting its businesses (e.g., Beckett Collectibles), and Plaintiff's choice of forum deserves weight. *See*

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014). Wilson's Colorado residency does not outweigh these factors.

### B. Personal Jurisdiction Over TA Associates

#### 1. Minimum Contacts

TA Associates has a regional office in Austin, Texas (Compl. ¶ 10; Price Decl. ¶ 3), constituting purposeful availment of the forum and providing continuous and systematic contacts with the state of Texas. Personal jurisdiction exists if the Defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Establishing an office in the forum location is evidence of a continuous and systematic presence. Furthermore, Plaintiff alleges Texas courts have specific jurisdiction over TA Associates' attempt to purchase Clanwilliam at a below-market price, implicating its Texas presence as part of its broader operations (Compl. ¶¶ 36-38). At the motion-to-dismiss stage (e.g., Rule 12(b)(2)), the plaintiff need only establish a prima facie case for specific jurisdiction, with the court accepting uncontroverted allegations as true and resolving factual disputes in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865 (5th Cir. 2001)  It is uncontroverted that TA Associates maintains a Texas office and a factual dispute exists as to the role of TA Associates' Texas office in the attempted purchase of Clanwilliam. This factual dispute must be resolved at this stage in the Plaintiff's favor.

#### 2. Arising From Contacts

TA Associates' Texas presence supports its overall involvement in the alleged conspiracy and tortious interference. Specific jurisdiction does not require every act to occur in the forum, only that the claim "arise out of or relate to" the defendant's contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). The Plaintiff has alleged that TA Associates' Texas office connects to its alleged role in the undervalued sale. As stated previously, at this stage, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor. *Iqbal*, 556 U.S. at 678; *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (specifically for 12(b)(2) prima facie case). If necessary, Plaintiff requests jurisdictional discovery to confirm TA Associates' Texas office connection to the alleged conspiracy.

### 3. *Fairness*

With a Texas office and significant U.S. operations, TA Associates cannot claim unfairness in litigating here. Texas's interest in regulating business transactions affecting its residents further supports jurisdiction.

## C. Purposeful Availment of Texas Jurisdiction is Undisputed, and A Prima Facie Showing Suffices

Plaintiff's prima facie showing suffices, and Defendants' declarations (Wilson Decl., Price Decl.) raise factual disputes for resolution at a later stage, not on a Rule 12(b)(2) motion. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

The Plaintiff has alleged that both Wilson and TA Associates have "purposefully availed" themselves of activities within Texas: Wilson by

administering substantial trust assets in the state (and by trading the trusteeship of one of the Texas Trusts for an agreement to proceed with the sale of Clanwilliam), and TA Associates by operating a regional office in the State. Any dispute on these facts must be resolved in the Plaintiff's favor at this stage.

For half a century, the touchstone of jurisdictional due process has been "purposeful availment." Since *Hanson v. Denckla* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) *(emphasis added)* "it is essential in each case that there be some act by which the *defendant purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Three aspects of this requirement are relevant to the instant case. First, it is only the Defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of ... the 'unilateral activity of another party or a third person.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Wilson and TA Associate purposefully availed themselves of Texas jurisdiction independent of any action by the Plaintiff or other third party.

Second, the acts relied on must be "purposeful" rather than fortuitous. Sellers who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to the jurisdiction of the latter in suits based on their activities. By contrast, a defendant will not be haled into a jurisdiction solely based on contacts that are "random, isolated, or fortuitous." *Id.* at 473 (citing

*Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)).  There is nothing random, isolated, or fortuitous about Wilson managing trust assets in Texas and TA Associates opening an office in the state.

Third, a defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction. Jurisdiction is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there. See Merriam Webster's Collegiate Dictionary 79 (10th ed. 1993) ("Avail: ... to be of use or advantage to: profit."). By contrast, a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980) ("The Due Process Clause ... gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex.2002).

In short, Wilson and TA Associates purposefully chose to enter the jurisdiction of Texas, and the Plaintiff has made a valid prima facie showing that these minimum contacts with the forum are sufficient to establish personal jurisdiction in this case. Any dispute regarding personal jurisdiction must be satisfied in the Plaintiff's favor at this stage. "We must accept the plaintiff's uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and

other documentation." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir.2002) (internal quotation marks and citation omitted) (alterations in original).

### III.    PLAINTIFF STATES VALID CLAIMS UNDER RULE 12(b)(6)

Under Rule 12(b)(6), the Court must accept Plaintiff's allegations as true and determine if they state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's claims for breach of fiduciary duty, conspiracy, tortious interference, removal of trustee, and accounting are well-pleaded. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also, *Grisham v. United States*, 103 F.3d 24, 25–26 (5th Cir.1997).

#### A. Breach of Fiduciary Duty (First Claim)

Plaintiff alleges Wilson, as trustee, owed fiduciary duties to administer the Clanwilliam Trust in the beneficiary's interest, yet breached those duties by self-dealing, devaluing assets, and refusing accountings (Compl. ¶¶ 35-42, 50-66). Defendants argue Wilson owes no duty to Plaintiff as a non-beneficiary, citing the Trust Instrument (Mot. at 19). However, Plaintiff alleges he is the ultimate beneficial owner through Triton and funded the trust (Compl. ¶¶ 15, 27), raising a plausible claim of a protectable interest. Texas law recognizes fiduciary duties to settlors or beneficial owners in certain contexts, *see Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996), and this dispute is for the merits, not dismissal.

Furthermore, as stated previously, Article 5 of the Assignment Agreement provides that Lindberg, as Assignor, shall *remain the beneficial owner* of the Primary Restitution Assets (which expressly include Clanwilliam) and shall be entitled to receive allocations of income or loss with respect to the Primary Restitution Assets.

The Plaintiff, as a *beneficial owner* of Clanwilliam per the plain terms of the Assignment Agreement, has a reasonable expectation of reliance on the fiduciary duty of Wilson as trustee.  The Texas Supreme Court has recognized that a fiduciary duty can extend beyond formal beneficiaries if the trustee's actions induce reasonable reliance by a third party, creating a duty of care. See *Klein v. Century Lloyds*, 275 S.W.2d 95, 97 (Tex. 1955).

See also *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 735 (Tex. App.— Corpus Christi 1994, writ denied): A trustee may be liable to third parties for tortious acts (e.g., fraud) committed in administering the trust. Wilson's alleged self-dealing related to another Texas Trust (Compl. ¶¶ 35-42) directly defrauded Triton Financial Limited as the Trust Note lender relying on Clanwilliam's value as collateral for its Note, giving rise to a breach of fiduciary duty claim.

### B. Conspiracy and Tortious Interference (Second Claim)

Plaintiff alleges Wilson and TA Associates conspired to sell Clanwilliam at a loss, involving unlawful acts (e.g., breaching fiduciary duties) and causing $350 million in damages (Compl. ¶¶ 67-68). For tortious interference, Plaintiff alleges Wilson intentionally undermined higher bids (e.g., Quadro, Apax) to favor TA Associates, causing economic harm (Compl. ¶¶ 71-76). Defendants' argument that no

underlying tort exists (Mot. at 19) fails because the fiduciary breach supplies the tortious act. *See Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).

### C. Removal of Trustee (Third Claim)

Plaintiff seeks Wilson's removal for serious breaches of trust (Compl. ¶¶ 77-84), permissible under Texas law when a trustee's actions harm the trust's purpose. *See* Tex. Prop. Code § 113.082. The allegations of self-dealing and asset devaluation support this claim.

### D. Demand for Accounting (Fourth Claim)

Plaintiff demands an accounting under Texas Trust Code § 113.151 (Compl. ¶¶ 85-88), a right afforded to settlors or beneficiaries. Plaintiff's alleged role as settlor through Triton (Compl. ¶ 28) makes this claim plausible.

## IV.    FACTS CONSTRUED IN LIGHT MOST FAVORABLE TO PLAINTIFF

As cited previously, the Plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities Inc.*, 94 F.3d 189, 194 (5th Cir.1996) The undisputed facts cited below, as further supported by the attached Affidavit, are sufficient to establish subject-matter jurisdiction, personal jurisdiction, and plausible claims for relief:

> A. Steve Wilson has made a "side deal" with M3 Partners involving the trust owning Beckett Collectibles, a Texas-headquartered company, to facilitate the Clanwilliam sale. These allegations show Wilson

purposefully directed activities toward Texas by managing Texas-based assets and negotiating deals affecting them.

B. It is uncontroverted that: TA Associates maintains a Texas office; TA Associates has retained Latham & Watkins to represent it in the acquisition of Clanwilliam; Latham & Watkins opened a Texas office in 2021 in part to work closely with TA Associates on transactions; TA Associates has communicated with Latham & Watkins from its Texas office; and Steve Wilson is a former partner of Latham & Watkins and continues to receive compensation from the firm.

C. TA Associates' Texas office connects to its alleged role in the undervalued sale of Clanwilliam.

D. Both Wilson and TA Associates have "purposefully availed" themselves of activities within Texas: Wilson by administering substantial trust assets in the state (and by trading the trusteeship of one of the Texas Trusts for an agreement to proceed with the sale of Clanwilliam), and TA Associates by operating a regional office in the State which it has used to communicate with Latham & Watkins, the law firm representing TA Associates in the purchase of Clanwilliam.

E. The Assignment Agreement executed in connection with the Order Appointing Special Master (attached hereto as Exhibit B) provides

that Lindberg, as Assignor, shall remain the *beneficial owner* of the Primary Restitution Assets (which expressly include Clanwilliam).

F. The Assignment Agreement further provides that the Assigned Rights and Interests are only assigned *pending satisfaction* by Lindberg of his obligations under the Order.

## V.    REQUEST FOR LEAVE TO AMEND

If the Court finds any jurisdictional or pleading deficiency, Plaintiff requests leave to amend under Fed. R. Civ. P. 15(a)(2), which should be freely granted when justice requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## CONCLUSION

Plaintiff has established subject-matter jurisdiction, personal jurisdiction, and plausible claims for relief. Defendants' Motion to Dismiss seeks to resolve factual disputes and merits issues prematurely. The Court should deny the motion and allow this case to proceed.

**Dated:** March 22, 2025

Respectfully submitted,

Greg E. Lindberg
Plaintiff
P.O. Box 159
Thonotosassa, FL 33592
Tel. 1-919-308-9686
Email. gelindberg@gmail.com

## CERTIFICATE OF SERVICE

I, Greg E. Lindberg, hereby certify that on March 22, 2025, I caused a true and correct copy of the foregoing Plaintiff's Opposition to Defendants' Motion to Dismiss to be served upon all counsel of record via the Court's CM/ECF system, which will send notification of such filing to the following:

**Counsel for Defendant Hugh Steven Wilson:**

John F. Bash
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
Tel: (737) 667-6100
Fax: (737) 667-6110
johnbash@quinnemanuel.com

Eric D. Wolkoff
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
ericwolkoff@quinnemanuel.com

**Counsel for Defendant TA Associates, L.P.:**

Timothy Cleveland
Austin H. Krist
Lourdes Ortiz
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
West Lake Hills, Texas 78746
Tel: (512) 689-8698
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com
lortiz@clevelandkrist.com

Kevin B. Huff
Thomas G. Schultz
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
khuff@kellogghansen.com
tschultz@kellogghansen.com

I further certify that all parties are registered CM/ECF users, and service was accomplished electronically pursuant to Local Rule CV-5(a) of the Western District of Texas and Federal Rule of Civil Procedure 5(b)(2)(E).

**Dated:** March 22, 2025

Greg E. Lindberg
Plaintiff
P.O. Box 159
Thonotosassa, FL 33592
Tel. 1-919-308-9686
Email. gelindberg@gmail.com