IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

Civil Action No. 1:25-cv-00133-DAE

| | |
|---|---|
| GREG E. LINDBERG | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HUGH STEVEN WILSON and | ) |
| TA ASSOCIATES, L.P. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION TO TAKE JUDICIAL NOTICE OF NEWS ARTICLE REGARDING FBI INVESTIGATION OF MO MEGHJI AND JUDICIAL NOTICE OF MEMORANDUM OF LAW FILED IN PLAINTIFF'S NORTH CAROLINA CASE**

**NOW COMES** Plaintiff Greg E. Lindberg respectfully moves this Honorable Court, pursuant to Federal Rule of Evidence 201, to take judicial notice of (a) the article published by *The Guardian* on October 11, 2024, titled "New Orleans Archdiocese Bankruptcy: FBI Investigation," attached hereto as Exhibit A and incorporated herein by reference, and (b) the attached Exhibit B, the "Memorandum of Law in Support of Defendant Greg Lindberg's Motion for Judgment of Acquittal or, Alternatively, for a New Trial" (hereinafter "Memorandum"), filed on May 29, 2024, in *United States v. Greg E. Lindberg, et al.*, No. 5:19-cr-22-MOC, United States District Court for the Western District of North Carolina. This motion is filed in support of Plaintiff's opposition to Defendants' Motion to Dismiss and his claims

of breach of fiduciary duty, self-dealing, and conspiracy. In support of this motion, Plaintiff states as follows:

## LEGAL BASIS FOR JUDICIAL NOTICE OF GUARDIAN ARTICLE

1. Federal Rule of Evidence 201(b) permits a court to take judicial notice of a fact that is "not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

2. The article from *The Guardian*, a reputable and widely recognized international news publication, reports on an FBI investigation into the bankruptcy proceedings of the Archdiocese of New Orleans, including an FBI investigation into the roles of financial advisor Mo Meghji and the law firm Latham & Watkins. These facts are matters of public record and satisfy the criteria for judicial notice.

## FACTS SUBJECT TO JUDICIAL NOTICE

3. The article details an ongoing FBI investigation into the Archdiocese of New Orleans' Chapter 11 bankruptcy, filed in May 2020, focusing on potential financial misconduct and conflicts of interest.

4. It specifically highlights the FBI's investigation of Mo Meghji, a financial advisor to the Archdiocese, for his role in managing the bankruptcy estate, as

well as the involvement of Latham & Watkins in providing legal counsel or structuring investments related to the bankruptcy process.

5. Mo Meghji and Latham & Watkins are the same parties involved in this case.

6. These facts are highly relevant as they parallel allegations of mismanagement, self-dealing, and conflicts of interest involving Defendant Hugh Steven Wilson and Defendant TA Associates, L.P., facilitated by Latham & Watkins and Mo Meghji's unlawful conduct in this case.

## REASONS FOR THE COURT TO TAKE JUDICIAL NOTICE

7. **FBI Investigation into Mo Meghji and Financial Mismanagement:** The FBI's investigation into Mo Meghji, as reported, centers on his role as a financial advisor in the Archdiocese bankruptcy, where he allegedly influenced asset management to the detriment of creditors. This mirrors Plaintiff's allegations against Defendant Wilson, who, as Trustee of the Clanwilliam Trust, is accused of mismanaging trust assets by pursuing an undervalued sale of Clanwilliam Group to TA Associates for $450 million—$350 million below its market value (Affidavit, Page 6, ¶ 3). Judicial notice of Meghji's FBI investigation is warranted because it underscores a pattern of fiduciary misconduct in high-stakes financial restructurings, directly relevant to assessing Meghji's and Wilson's actions in this case and the integrity of the Clanwilliam trust's administration. Roscoe Pound wrote in *Law as the Record of Civilization* that "the life of the law has not been logic; it has been

experience." The Court should take notice of this FBI investigation of Meghji and the involvement of Latham & Watkins to evaluate whether similar "experience"—namely, potential fiduciary breaches—threatens the fair administration of justice in this case.

8. **Latham & Watkins' Involvement and Conflicts of Interest:** The article notes Latham & Watkins' role in the Archdiocese bankruptcy, raising questions about the firm's influence over financial decisions. In the instant case, Latham & Watkins represents Defendant TA Associates in the Clanwilliam transaction while having a prior relationship with Defendant Wilson, a former partner who continues to receive compensation from the firm (Affidavit, Page 7, ¶ 2). Furthermore, Latham & Watkins advised Plaintiff on the Clanwilliam Trust's formation, creating a potential conflict given its current adverse representation of TA Associates (Affidavit, Page 7, ¶ 3-4). Judicial notice of Latham & Watkins' involvement in the Archdiocese case highlights a recurring theme of the firm's entanglement in complex restructurings with alleged conflicts, supporting Plaintiff's claim of conspiracy and collusion (Affidavit, Page 9, ¶ 12). This is particularly germane given Latham & Watkins' ongoing business relationship with TA Associates, including work tied to its Texas office (Affidavit, Page 7, ¶ 6; Page 8, ¶ 8).

9. **Similarities with the Existing Case:** The Archdiocese bankruptcy involves allegations of systemic asset concealment and mismanagement to shield

funds from creditors, paralleled by Plaintiff's claims that Wilson and TA Associates are orchestrating an undervalued sale to benefit themselves and Latham & Watkins at Plaintiff's expense (Affidavit, Page 6, ¶ 1-3; Page 9, ¶ 11-12). Both cases feature fiduciaries allegedly prioritizing personal or third-party gain over their duties, compounded by federal investigations into misconduct. The Court should take notice of these similarities to fully evaluate the plausibility of Plaintiff's allegations and the potential threat to judicial oversight, especially given Defendant's decision to ignore the plain terms of the Order Appointing Special Master which require federal court approval for any attempted sale of Clanwilliam (Affidavit, Page 12, ¶ 4). These oversight concerns are similar to the grounds for the FBI investigation of Meghji and Latham & Watkins in the Archdiocese case.

10. Meghji is under FBI investigation in the Archdiocese case in part for allegedly unlawfully originating a $30 million loan which was intended for the purpose of paying his fees and Latham & Watkins fees. In the instant case, Meghji and Latham & Watkins have likewise pursued the undervalued sale of Clanwilliam primarily for the purpose of paying their fees. At a board meeting of Clanwilliam's parent company in December 2024 where the sale was discussed, one of the primary justifications given for the sale was to pay fees to Meghji's firm M3 Partners. Meghji and other advisors are currently charging Clanwilliam's parent company over $2.5 million per month in fees.

11. **Public Interest and Judicial Integrity:** The FBI investigation into the Archdiocese bankruptcy is a matter of significant public interest, reflecting broader concerns about transparency in fiduciary-managed proceedings.

12. Critically, **the Plaintiff remains the sole shareholder of his North Carolina insurance companies** (giving him ample standing as in injured party in this case) and a sale of Clanwilliam for $350 million less than its established market value harms not only the Plaintiff by $350 million but also harms the policyholders of the Plaintiff's insurance companies, also amplifying the public stakes. (Affidavit, Page 10, ¶ 7),

13. Judicial notice ensures the Court can safeguard its authority and the interests of all stakeholders, consistent with the oversight mandated by the Order Appointing Special Master (Affidavit, Page 10, ¶ 5).

14. *The Guardian* is a source whose accuracy cannot reasonably be questioned in this context, as it reports on public events and federal investigations, verifiable through official records. Plaintiff does not seek to admit the article for the truth of every assertion but to establish the existence and scope of the FBI investigation and Latham & Watkins' involvement as facts not subject to reasonable dispute.

### LEGAL BASIS FOR JUDICIAL NOTICE OF MEMORANDUM OF LAW AS CHARACTER EVIDENCE

15. The Memorandum is a public court filing, accessible via the federal judiciary's PACER system, and its authenticity and contents are not subject

to reasonable dispute. Courts routinely take judicial notice of filings from other judicial proceedings as matters of public record. *See, e.g., St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (noting courts may take notice of proceedings in other courts that bear on the case at hand).

16. Plaintiff does not seek judicial notice of the Memorandum for the truth of all assertions therein (e.g., legal conclusions or disputed facts from the criminal case) but rather for its existence and the statements it attributes to Lindberg, which reflect his character traits relevant to this civil action under Federal Rule of Evidence 404(a)(1) (permitting evidence of a person's character when relevant).

## DESCRIPTION OF THE MEMORANDUM

17. The Memorandum, filed by Lindberg's counsel in his criminal retrial, argues for acquittal or a new trial on charges of conspiracy to commit honest-services wire fraud and federal-program bribery. It spans 55 pages and includes detailed factual assertions, legal arguments, and excerpts from trial evidence, including Lindberg's recorded statements to North Carolina Insurance Commissioner Michael Causey.

18. Key passages relevant to Lindberg's character include:

    1. Lindberg's insistence on lawful campaign contributions within "the bounds of North Carolina election law" (Mem. at 10, citing GEL Exh.

195, at 37:16-17), rejecting a personal payment to Causey as illegal (id., citing GEL Exh. 195, at 11:7-12).

2. His repeated statements seeking only "fair" and "rigorous" regulation, not favoritism, such as: "We don't have a problem with thorough, rigorous, slow regulation" (id. at 17, citing GEL Exh. 192, at 32:34-33:1), and "all we're asking for is an even playing field" (id. at 18, citing GEL Exh. 195, at 19:4-11).

3. Testimony from Deputy Commissioner Debra Walker and others confirming no "side deal" or corrupt intent tied to Lindberg's request for her oversight (id. at 18, citing Day 6 Rough Tr. 28:16-22; Day 7 Rough Tr. 19:10-11).

**REASONS FOR JUDICIAL NOTICE AS CHARACTER EVIDENCE**

19. **Relevance to Lindberg's Character in this Case:** In the instant action, Plaintiff alleges Defendants Wilson and TA Associates engaged in self-dealing and breached fiduciary duties by pursuing an undervalued sale of Clanwilliam Group (Compl., Doc. 1). Defendants impugn Lindberg's character throughout their filings with various references to Lindberg's cases in North Carolina. The Memorandum provides evidence of Lindberg's consistent traits of lawful intent and fairness, countering such attacks. Specifically:

1. His rejection of illegal payments and emphasis on legal compliance (Mem. at 10) demonstrate a character for honesty and adherence to law, relevant to rebutting claims of illicit motives here.

2. His pursuit of an "even playing field" (id. at 18) reflects a trait of fairness, undermining assertions that he seeks unfair advantage in business transactions.

20. **Consistency Across Contexts:** The Memorandum captures Lindberg's statements and conduct in a high-stakes regulatory context, paralleling the financial and fiduciary issues in this case. His documented aversion to corruption and preference for equitable treatment (id. at 17-18) are traits that bear directly on his credibility and intent as Plaintiff, particularly given Defendants' alleged exploitation of the assets that the Plaintiff contributed to the Clanwilliam trust (Affidavit, Page 6, ¶ 1-3).

21. **Public Record and Reliability:** As a court filing, the Memorandum's accuracy as to its contents—especially quoted trial evidence—is beyond reasonable dispute. It reflects Lindberg's own words, recorded by the FBI, and testimony from unbiased witnesses (e.g., Debra Walker), enhancing its reliability as character evidence. Judicial notice avoids the need for extrinsic testimony while ensuring the Court considers relevant, authenticated material.

22. **Non-Prejudicial Use:** Plaintiff seeks notice only of the Memorandum's existence and the character traits it reveals, not to relitigate the criminal case's outcome. This limited scope minimizes prejudice to Defendants while aiding the Court's understanding of Lindberg's character, consistent with Rule 404(a)(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Take judicial notice of the October 11, 2024, *Guardian* article and consider its relevance in adjudicating Defendants' Motion to Dismiss and Plaintiff's claims;

2. Take judicial notice of the Memorandum of Law filed May 29, 2024, in *United States v. Greg E. Lindberg, et al.*, No. 5:19-cr-22-MOC (W.D.N.C., Doc. 441);

3. Consider it as evidence of Plaintiff's character traits of lawful intent, fairness, and lack of corrupt motive in adjudicating the instant case; and

4. Grant such further relief as the Court deems just and proper.

Dated: April 2, 2025

Respectfully submitted,

**/s/ Greg E. Lindberg**
Greg E. Lindberg
Plaintiff
P.O. Box 159
Thonotosassa, FL 33592
Tel: 1-919-308-9686
Email: gelindberg@gmail.com

## CERTIFICATE OF SERVICE

      I, Greg E. Lindberg, hereby certify that on April 2, 2025, I caused a true and correct copy of the foregoing Plaintiff's Opposition to Defendants' Motion to Dismiss to be served upon all counsel of record via the Court's CM/ECF system, which will send notification of such filing to the following:

**Counsel for Defendant Hugh Steven Wilson:**

John F. Bash
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
Tel: (737) 667-6100
Fax: (737) 667-6110
johnbash@quinnemanuel.com

Eric D. Wolkoff
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
Fax: (617) 712-7200
ericwolkoff@quinnemanuel.com

**Counsel for Defendant TA Associates, L.P.:**

Timothy Cleveland
Austin H. Krist
Lourdes Ortiz
CLEVELAND KRIST PLLC
303 Camp Craft Road, Suite 325
West Lake Hills, Texas 78746
Tel: (512) 689-8698
tcleveland@clevelandkrist.com
akrist@clevelandkrist.com
lortiz@clevelandkrist.com

Kevin B. Huff
Thomas G. Schultz
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
khuff@kellogghansen.com
tschultz@kellogghansen.com